Filed 6/27/24

## CERTIFIED FOR PARTIAL PUBLICATION[*]

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GABRIELA CISNEROS, | F081373 |
| Plaintiff and Appellant, | (Super. Ct. No. BCV-19-100294) |
| v. | |
| DEPARTMENT OF MOTOR VEHICLES et al., | **OPINION** |
| Defendants and Respondents. | |
| [And 49 other cases.[*]] | |

---

[*]      Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts IV.B., IV.C., and VII.

[*]      *Granados v. Department of Motor Vehicles* (No. BCV-19-100295); *Reese v. Department of Motor Vehicles* (No. BCV-19-100296); *Alejandra v. Department of Motor Vehicles* (No. BCV 19-100297); *Frias v. Department of Motor Vehicles* (No. BCV-19-100298); *Orrin v. Department of Motor Vehicles* (No. BCV-19-100556); *Chavez v. Department of Motor Vehicles* (No. BCV-19-100557); *O'Neil v. Department of Motor Vehicles* (No. BCV-19-100558); *Berry v. Department of Motor Vehicles* (No. BCV-19-100563); *Cosper v. Department of Motor Vehicles* (No. BCV-19-100566); *Klein v. Department of Motor Vehicles* (No. BCV-19-100572); *Jimenez v. Department of Motor Vehicles* (No. BCV-19-100776); *Owen v. Department of Motor Vehicles* (No. BCV-19-100777); *Butler v. Department of Motor Vehicles* (No. BCV-19-100778); *Howard v. Department of Motor Vehicles* (No. BCV-19-100780); *Singh v. Department of Motor Vehicles* (No. BCV-19-100805); *Russell v. Department of Motor Vehicles* (No. BCV-19-100807); *Lynam v. Department of Motor Vehicles* (No. BCV-19-100808); *Blackhurst v. Department of Motor Vehicles* (No. BCV-19-100810); *Aguilar v. Department of Motor Vehicles* (No. BCV-19-100835); *Hawkins v. Department of Motor Vehicles* (No. BCV-19-100836); *Bennett v. Department of Motor Vehicles* (No. BCV-19-100837); *Ogden v. Department of Motor Vehicles* (No. BCV-19-100838); *Segovia-Rivera v. Department of Motor Vehicles* (No. BCV-19-100839); *Campbell v. Department of Motor Vehicles* (No. BCV-19-100840); *R. Gonzalez-Ozuna v. Department of Motor Vehicles* (No.

**SEE CONCURRING OPINION**

APPEAL from a judgment of the Superior Court of Kern County. Eric Bradshaw, Judge.

Middlebrook & Associates and Richard O. Middlebrook for Plaintiffs and Appellants.

Xavier Becerra and Rob Bonta, Attorneys General, Chris A. Knudsen, Assistant Attorney General, Gary S. Balekjian, Lauren Sible and Brad Parr, Deputy Attorneys General for Defendants and Appellants.

-ooOoo-

Appellants are drivers whose licenses were suspended by the Department of Motor Vehicles (DMV) after they were arrested for driving under the influence. The drivers invoked their right to an "administrative per se" (APS) hearing before the DMV to challenge the suspension. Before the APS hearings, they requested continuances based on their counsel's conflicting court appearances. The DMV denied the requests, went forward with the hearings, and issued administrative decisions reinstating the suspension of their licenses. The drivers challenged the DMV's denial of the continuances by filing

BCV-19-100841); *Davis v. Department of Motor Vehicles* (No. BCV-19-100843); *Becarra v. Department of Motor Vehicles* (No. BCV-19-100878); *Almanza v. Department of Motor Vehicles* (No. BCV-19-100879); *Graf v. Department of Motor Vehicles* (No. BCV-19-100880); *J. Perales v. Department of Motor Vehicles* (No. BCV-19-100881); *Del Sesto v. Department of Motor Vehicles* (No. BCV-19-100885); *Montero v. Department of Motor Vehicles* (No. BCV-19-100886); *Sanders v. Department of Motor Vehicles* (No. BCV-19-100887); *Martinez v. Department of Motor Vehicles* (No. BCV-19-100907); *Miller v. Department of Motor Vehicles* (No. BCV-19-100908); *White v. Department of Motor Vehicles* (No. BCV-19-100909); *Hunt v. Department of Motor Vehicles* (No. BCV-19-100910); *Herrera v. Department of Motor Vehicles* (No. BCV-19-100913); *Perea v. Department of Motor Vehicles* (No. BCV-19-101077); *Carter v. Department of Motor Vehicles* (No. BCV-19-101078); *Diaz v. Department of Motor Vehicles* (No. BCV-19-101079); *Kim v. Department of Motor Vehicles* (No. BCV-19-101080); *Romero v. Department of Motor Vehicles* (No. BCV-19-101081); *Datiz v. Department of Motor Vehicles* (No. BCV-19-101126); *M. Rodriguez v. Department of Motor Vehicles* (No. BCV-19-101127); *D. Gonzalez v. Department of Motor Vehicles* (No. BCV-19-101134); *Mody v. Department of Motor Vehicles* (No. BCV-19-101135); *Blanche v. Department of Motor Vehicles* (No. BCV-19-101140); *Lopez Vega v. Department of Motor Vehicles* (No. BCV-19-101141).

2.

petitions for writs of mandate in the superior court. The superior court denied their petitions. The drivers appealed.

The briefing in this appeal was divided into two stages at the request of the Attorney General. The first stage addressed whether the drivers' petitions for writ of mandate were timely—a question that might have been dispositive of several of the drivers' cases. The first stage ended in April 2022, when we adopted the statutory interpretation set forth in part II. of this opinion. We concluded the 10-day time limit in Government Code section 11524, subdivision (c)[1] for seeking judicial review of a continuance "denied by an administrative law judge of the Office of Administrative Hearings" does not apply to APS proceedings because a DMV hearing officer is not an administrative law judge. Applying this interpretation to the facts, the drivers' writ petitions were timely, and the issues reserved for the second stage needed to be addressed.

Before any briefs were filed in the second stage, the Second District filed an opinion authored by Justice Currey concluding that "the DMV's APS hearing structure violates the California and federal due process rights of drivers by combining the advocacy and adjudicatory roles into a single DMV employee." (*California DUI Lawyers Assn. v. Department of Motor Vehicles* (2022) 77 Cal.App.5th 517, 530 (*DUI Lawyers II*).) The parties' second stage briefing raised various issues involving *DUI Lawyers II*. We conclude (1) the general rule that judicial decisions are retroactive applies in the circumstances of this case; (2) the due process violations identified in *DUI Lawyers II* are structural; and (3) the record shows that at least one of those violations, managerial ex parte communications or command control, affected the hearing officers' decisions on the continuance requests. Because that due process violation is structural, the drivers are not required to demonstrate prejudice. Furthermore, to remedy the due

---

[1] Undesignated statutory references are to the Government Code.

process violation, the drivers are entitled to new APS hearings that address the merits for their challenges to the suspension orders.

We therefore reverse the denial of the drivers' writ petitions and remand for further proceedings.

**FACTS**

*Overview*

The appellants are persons whose California driver's licenses were suspended by the DMV after they were arrested for driving under the influence (collectively, Drivers). Each Driver was served with an order suspending his or her driver's license and subsequently requested an APS hearing.[2] The relevant APS hearings on the license suspensions were set in early 2019. The Drivers have been represented by Attorney Richard O. Middlebrook throughout the administrative and judicial proceedings.

In each APS proceeding, the Driver requested a continuance of the hearing due to a conflict with Attorney Middlebrook's court calendar. The requests for a continuance that are relevant to this appeal were made in January through April 2019. The requests were denied, the APS hearing proceeded as scheduled, and the DMV issued a written decision reimposing the license suspension. The administrative decisions stated the Driver or the Driver's representative "did not appear for the indicated hearing nor was any evidence presented on your behalf and a notice of action against your driving privilege in this case was not returned unclaimed."

The Drivers' petitions for writ of mandate assert that for nearly two decades the policy of the DMV Bakersfield Driver Safety Office (BDSO) towards continuances

---

[2] The procedure involving the immediate suspension of the driver's license of a person who drove with a blood-alcohol concentration (BAC) of .08 percent or more "is called 'administrative per se' because it does not impose criminal penalties, but simply suspends a person's driver's license as an administrative matter upon a showing the person was arrested for driving with a certain blood-alcohol concentration." (*MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 155; see Veh. Code, § 13353.2, subd. (a)(1).)

4.

required requests for continuances based on good cause to be made at least 10 days before the APS hearing date, but also allowed requests to be made less than 10 days in advance of the APS hearing when other trials or court hearings went forward, were extended beyond the time anticipated, or trailed. Drivers contend this practice reflected the vagaries of the criminal court calendar where scheduled court events represented possible conflicts with APS hearings set for the same time, but those court events often would not result in an actual conflict necessitating the continuance of the APS hearings. The writ petitions assert that when an actual conflict did not arise, the APS hearings could go forward. For example, if a trial scheduled to begin on a particular day was "trailed," the attorney acting as trial counsel would become available to appear in APS hearings scheduled for later that day. Alternatively, when court proceedings went forward and created an actual conflict with a scheduled APS hearing, the DMV routinely would grant last minute continuances of the APS hearings.

Around 2017, the DMV appointed a new local manager for the BDSO, Christopher Pitchford. Manager Pitchford began making changes in the way the BDSO scheduled APS hearings and handled continuances. He required that requests for continuance based on conflicts with court trials and hearings be made at least 10 days in advance, based on the perception that nearly all such trials and hearings were scheduled more than 10 days in advance. Attorney Middlebrook and others contacted Mr. Pitchford and explained that, because they were scheduled for trials and court hearings nearly every single week, the new policy would force them to request continuances for nearly all APS hearings, which would prevent them from conducting APS hearings when the trials were settled, continued, or dismissed. The attorney asserted these dispositions of court matters often occurred, which opened their schedules and allowed them to conduct APS hearings.

The Drivers alleged that Manager Pitchford insisted on implementing the new policy requiring continuance requests to be made 10 days in advance and, accordingly, requests for continuance were made on that basis. As a result, continuance requests were

5.

made in nearly all APS proceedings and the DMV granted those requests for almost two years.  Attorney Middlebrook asserts that during the two-year period the policy was in place, he conducted only two APS hearings and "continuances were scheduled at least two-months out but ha[d] been scheduled as much as six-months out," with rescheduling sometimes taking over a year.

In July 2018, Manager Pitchford phoned Attorney Middlebrook's office to speak with him about continuances.  Attorney Middlebrook stated they agreed to return to the old system that allowed last minute continuances when necessary—that is, when an actual conflict arose with court proceedings instead of when there were potential conflicts.

In December 2018, the DMV reassigned Manager Pitchford and replaced him with a part-time interim manager, Michael Windover, from the DMV's Oxnard Driver Safety Office.  Attorney Middlebrook did not know this change was being made.  With the change in managers, requests for a continuance made by Attorney Middlebrook began to be denied as untimely and the APS hearings were conducted without the Driver or counsel being present, which resulted in the DMV issuing decisions reinstating the suspensions.  Drivers contend over 70 APS hearings were conducted by the DMV in abstentia between January 17, 2019, and April 19, 2019.  The specific details of each Drivers' APS proceedings will not be described in this opinion, but a few examples will be provided.

*Granados*

Andrew Granados was arrested for driving under the influence on November 10, 2018.  His APS hearing was scheduled for January 4, 2019, at 11:15 a.m.  On January 4, 2019, at 8:09 a.m., a legal assistant from Attorney Middlebrook's office faxed the BDSO a letter requesting a continuance of the APS hearing due to Middlebrook's illness.  Later that day, Driver Safety Hearing Officer Raul Boone issued a letter stating:  "Your request is granted."

On January 7, 2019, the BDSO sent Attorney Middlebrook a notice stating Granados's APS hearing had been rescheduled for January 17, 2019, at 11:15 a.m. Also on January 7, 2019, the Kern County Superior Court rescheduled the jury trial in Jose Bravo's second degree murder case to January 16, 2019, so discovery related to an expert witness for the prosecution could be provided to the defense. Based on the conflict with the Bravo trial, Attorney Middlebrook sent the BDSO a letter dated January 14, 2019, requesting a continuance of Granados's APS hearing.

On January 17, 2019, at 10:49 a.m., Hearing Officer Boone faxed Attorney Middlebrook a form stating the request for a continuance of Granados's APS hearing "is denied because: the trial regarding People v. J. Bravo … did not go forth as stated on your Request for Continuance letter dated January 14, 2019, therefore, I will expect you to appear for the hearing scheduled at 11:15 AM on January 17, 2019." At 10:55 a.m. that day, Attorney Middlebrook faxed another letter requesting a continuance of Granados's APS hearing. The letter described a telephone conversation the day before between Attorney Middlebrook and Hearing Officer Boone about the Granados continuance and the continuance of the Bravo trial to April 2019. The letter also described Attorney Middlebrook's court appearances for that day in Ridgecrest and Porterville and stated he was unable to attend the APS hearing scheduled for 11:15 a.m.

The Ridgecrest appearances were set for 10:30 a.m. and included a motion hearing in Jamie Graus's driving under the influence case and a pretrial conference in Michael Melnichak's driving under the influence case. Graus's hearing had been continued to January 17, 2019, on January 15, 2019. The Tulare County Superior Court located in Porterville scheduled pretrial conferences in the cases of Eliseo Fernandez, Justine Zike, and others for 10:00 a.m. on January 17, 2019.

Hearing Officer Boone went forward with Granados's January 17, 2019 APS hearing as scheduled and issued a notification of findings and decision later that day. The decision stated: "You or your representative did not appear for the indicated hearing nor

7.

was any evidence presented on your behalf and a notice of action against your driving privilege in this case was not returned unclaimed." The decision found the three criteria for upholding the suspension order had been proven by the DMV's evidence—that is, the peace officer had reasonable cause to believe Granados was driving under the influence, the arrest of Granados was lawful, and Granados had driven a motor vehicle with a BAC of .08 percent or more. Accordingly, the decision reimposed the suspension of his driving privilege, effective January 26, 2019.

During the week of January 28, 2019, Attorney Middlebrook and Attorney Gabrielle LaCarre met with Manager Windover to discuss the denials of continuance and the problems created. The attorneys left the meeting believing Manager Windover had agreed to return to the previous practice of allowing continuances to be made with short notice when actual conflicts with court cases arose. However, when Attorney LaCarre sent an e-mail requesting confirmation that the denials had been set aside and the hearings would be rescheduled, Manager Windover responded with an e-mail stating he had not yet made a decision, but even if a new hearing was granted, the DMV would not return the affected Drivers to their license status.

On February 4, 2019, Granados and four other Drivers filed petitions for writ of mandate. Later in February, Attorney Middlebrook had discussions with the Attorney General's Office but no agreement was reached, those cases went forward, and more petitions for writ of mandate were filed.

*Reese*

Jacob Reese was arrested for driving under the influence on July 15, 2018. His APS hearing relevant to this appeal was scheduled for January 23, 2019, at 1:15 p.m. On January 15, 2019, Attorney Middlebrook faxed the BDSO a letter requesting a continuance of Reese's APS hearing based on the expectation that Bravo's jury trial would begin the following day and take about 10 days. The letter was essentially the same as Granados's January 14, 2019 letter requesting a continuance. On Friday, January

8.

18, 2019, Driver Safety Hearing Officer Lisa Witt issued a notice stating the request was denied because the Bravo trial did not go forward. The following Monday was a holiday—Martin Luther King, Jr. Day.

On Tuesday, January 22, 2019, at 3:16 p.m., Attorney Middlebrook faxed the DMV another letter requesting a continuance of Reese's APS hearing because the misdemeanor cases of Nicholas Orozco and Sawyer Minton had been trailed to January 23, 2019, and one was expected to go forward. The letter recounted the past practice of the BDSO for handling requested continuances based on court conflicts, described the difficulties created by the DMV's change in its practice, stated criminal cases had precedence over all civil matters and administrative proceedings pursuant to Penal Code section 1050, referred to the DMV Driver Safety Manual and its examples of good cause for a continuance of an APS hearing, and requested a continuance of Reese's APS hearing.

On January 23, 2019, Manager Windover issued a denial of the continuance request, stating the previous request was denied because the Bravo trial did not go forward, the subsequent request was untimely, and counsel was expected to appear at the APS hearing. Later that day, Manager Windover issued a notice of findings and decision stating neither Reese nor his representative appeared at the APS hearing, no evidence was presented on Reese's behalf, and the suspension of Reese's driving privilege was reimposed. Like Granados, Reese filed his petition for writ of mandate on February 4, 2019.

*Carter*

Gerald Carter was arrested for driving under the influence on January 20, 2019. On February 7, 2019, the DMV mailed Attorney Middlebrook documents that included a (1) notice of hearing dated February 7, 2019, stating Carter's APS hearing was to be held at 11:15 a.m. on April 8, 2019, before Hearing Officer Witt; (2) a notice of stay of the suspension pending the outcome of the APS hearing; (3) a request for discovery; and (4)

9.

the officer's statement on form DS 367, the arrest report, the traffic collision report, and blood test results.  The latter category of documents was sent to comply with the discovery provisions of section 11507.6.

On March 22, 2019, Carter requested a continuance of the Monday, April 8, 2019 APS hearing.  A similar request was made for the April 8, 2019 APS hearing for Jamie Perea.  The requests were prepared and signed by Attorney LaCarre and stated, on April 8, 2019, "I will be getting sent out to trial on one of two pending jury trials in the downtown Kern County Superior Court."  The defendants in the cases were Brent Spears and Spring Bunting.  The use of "I" was an error because Attorney Middlebrook was handling both the APS hearings and the two trials.  This error was evident on the face of the letter requests because the requests referred to the Bunting case being "sent out if both the Deputy District Attorney and Mr. Middlebrook announce ready" and, after providing an estimate of the time required for the trials, stated that "Mr. Middlebrook will be unavailable from Monday April 8, 2019 through Friday April 19, 2019."

In a letter dated March 29, 2019, Hearing Officer Witt stated:  "The request is denied.  In this case the Admin Per Se hearing was scheduled on January 23, 2019.  The two pending court trial cases cited in your motion for continuance were scheduled after January 23, 2019.  There is no evidence or facts stated to support good cause showing that you informed the court of the pending Admin Per Se hearing, or what diligent effort was made to avoid this conflict.  [¶]  Additionally, the motion stated that Attorney Lecarre [*sic*] will be appearing at the court trials, not Attorney Middlebrook.  [¶]  Therefore, Counsel is expected to appear for the hearing at the previously scheduled date and time."[3]

On April 4, 2019, Attorney Middlebrook faxed a letter to Hearing Officer Witt stating he understood there were two reasons for the denial—there being no conflict

---

[3]    No document in the administrative record provided to this court or the parties appendices show that on January 23, 2019, Carter APS hearing was set for April 8, 2019.

because Attorney LaCarre was trying the cases and the court had set trials in cases for the same week when the DMV's APS hearings were scheduled. The letter then stated:

> "As to the first, we own the error. However, it was clear from the context of the letter that the need for a continuance was due to MR. MIDDLEBROOK'S unavailability due to trial, not Ms. LaCarre. There would be no reason to request the continuance if Ms. LaCarre was trying the cases.

> "As to the second issue, you have a clear misunderstanding of how the judicial system works and what role an attorney plays in that system.… [¶] Under Penal Code Section 1050, as we have discussed before, criminal hearings MUST proceed before civil hearings which include Admin Per Se Hearings. Of course, those who have been schooled in the law, practiced for at least 10 years as lawyers, advanced to appointment or election as Judge, and have served in that capacity for some time know this. [¶] The courts (and by courts we are referring to Judges) are required to move cases expeditiously for public safety, witness and party issues. They are charged with doing so before permitting civil cases to proceed or to interfere with the advancement of criminal proceedings. That's a law.

> "In the case at hand, the [BDSO] set this hearing without consulting with our office and over our objections. The case was set February 7, 2019 and received in our office February 11, 2019. The trials were set January 28, 2019 by Judge Tiffany Organ Bowles."

The letter explained that superior courts set cases for trial without concern for the DMV's calendar and then stated:

> "It seems a lifetime ago that all this was so easy, and 10-20 DMV proceedings were occurring a week. Until Mr. Pitchford's modification of policy on his own and without any statutory authority two years ago, we had almost no problems. We would schedule afternoon hearings on Tuesday, Wednesday and Thursday three deep. If a case went to trial or an unexpected delay in cases occurred, last minute continuances were always granted. Hearings proceeded once discovery was received 95% of the time.

> "We did get some prolonged cases. But that was because the [BDSO] was left with one hearing officer (Raul Boone) for years. Some cases when being set or continued took almost two years just to get a new date. This was the DMV stranding Mr. Boone on an island and expecting him to handle the work of three hearing officers.

11.

"While Mr. Pitchford saw the error of his decision and sought to return to a productive scheduling routine, Mr. Windover's overruling (without notification) of Mr. Pitchford's return to prior policy set us back … again on this track."

On April 5, 2019, Hearing Officer Witt faxed Attorney Middlebrook a letter denying his renewed request for a continuance. The letter disagreed with the procedural history given in the renewed request, stating that (1) the April 8, 2019 APS hearing had been scheduled with the cooperation of Attorney Middlebrook's office on January 23, 2019; (2) discovery was requested; and (3) the discovery response was sent to Attorney Middlebrook's office on February 7, 2019, along with the notice of hearing. Witt's letter also stated:

"Once again, your request does not include any facts specific to this request to support good cause showing that *you* informed the court of *this* pending Admin Per Se hearing, or what diligent effort *you* made to avoid this conflict. This should include why you or your office agreed to trial on April 8, 2019 with the knowledge of a scheduled Admin Per Se hearing on the same day? If you did inform the court of the scheduling conflict, what was the response? [¶] Therefore, Counsel is expected to appear for the hearing at the previously scheduled date and time."

At 3:03 p.m. that day, Attorney Middlebrook faxed Hearing Officer Witt a letter stating:

"We are in receipt of your letter faxed today. You have an unbelievable misunderstanding of how courts work. It is a little terrifying that you believe Attorney's pick dates for trial. [¶] Courts assign dates for trial and all other hearings. Attorney's [*sic*] appear as ordered. [¶] The dates chosen and times chosen were not agreed to by our office. We were told the dates and time. There is zero agreement. [¶] Please review how court procedures work and review our prior letter. Please avoid another writ and grant this continuance due to good cause."

Hearing Officer Witt signed a notice of findings and decision dated April 23, 2019, that stated Carter's APS hearing was held on April 23, 2019. Nothing in the administrative record shows that the APS hearing scheduled for April 8, 2019, was rescheduled for April 23, 2019. The decision included the following: "Other Finding: Counsels requests for continuance dated March 22, 2019 and April 4, 2019 were denied

12.

as there was no evidence or facts stated to support good cause showing when Counsel knew about this conflict, if Counsel informed the court of the pending administrative hearing or what diligent effort was made to avoid this conflict." The decision noted that Carter or his representative did not appear at the hearing and reimposed the suspension of Carter's license. Drivers' writ petition alleged the decision gave the incorrect APS "hearing date of April 23, 2019, when the hearing was set and heard on April 8, 2019." Carter filed his petition for writ of mandate on April 18, 2019.

*Datiz*

Javier Datiz was arrested for driving under the influence on July 12, 2018. His APS hearing was scheduled for 2:15 p.m. on April 18, 2019, before Hearing Officer Boone. On April 5, 2019, Attorney Middlebrook requested a continuance of Datiz's APS hearing because he would be in Kern County Superior Court appearing in Jesus Diaz's case and "the hearing is set to begin on Thursday April 18, 2019 at 8:30 AM until 4:00 PM. As a result, I will be unavailable on Thursday April 18, 2019."

On April 18, 2019, at 1:36 p.m. (39 minutes before the scheduled hearing), Hearing Officer Boone faxed Attorney Middlebrook's office a letter stating Datiz's request for a continuance submitted on April 5, 2019, and refaxed on April 18, 2019, was denied. The letter stated the April 18, 2019 hearing date had been set on February 4, 2019, with the agreement of "Marisol from your office." After describing the timing and good cause requirements of section 11524, the letter stated: "Your request does not include any facts to support good cause. It does not appear that you informed the DMV of this pending trial to avoid this conflict. Why did you agree to an Admin Per Se hearing on February 4, 2019, for April 18, 2019, when you had already scheduled a motion on March 28, 2019, or inform the department of your motion in March 2019."

On April 19, 2019, Hearing Officer Boone signed and mailed a notification of findings and decision stating the APS hearing had been held on April 18, 2019, Datiz and his representative did not appear at the hearing, and the April 5, 2019 continuance request

13.

had been "denied because there was no evidence or facts stated to support good cause." The decision found the three criteria for upholding the suspension order had been proven by the DMV's evidence. Accordingly, the decision reimposed the suspension of Datiz's driving privilege.

*Mody and Lopez Vega*

Samir Mody was arrested for driving under the influence on July 16, 2018. Alexis Lopez Vega was arrested for driving under the influence on April 20, 2016. On February 5, 2019, the DMV mailed Attorney Middlebrook notices of hearing stating the APS hearings for Mody and Lopez Vega would be held on April 19, 2019, at 1:15 p.m. and 3:30 p.m., respectively.

On April 10, 2019, Attorney Middlebrook faxed separate letters to the DMV requesting the APS hearings be continued because he would be in trial in the Kern County Superior Court in the cases of Jason Alexander and Ann Campbell. The letters stated the matters had been expected to be continued, but new prosecutors had been assigned and Attorney Middlebrook was "informed today they will not agree to the continuance of the cases."

The continuance requests were denied by the hearing officers in letters to Attorney Middlebrook dated April 11, 2019. Both letters stated the APS hearings had been "scheduled with the cooperation of your office on February 4, 2019." The letter addressing Mody's APS hearing stated his request was not timely and did not include any facts to support good cause and supported these assertions by stating: "It does not appear that you informed the court of this pending Admin Per Se hearing and you have not provided the Trier of Fact what diligent effort you have made to avoid this conflict. Why did you agree to a trial on April 8, 2019, with the knowledge of a scheduled Admin Per Se hearing? Did you inform the court of the scheduling conflict? If you did inform the court of the conflict what was the courts response?" The letter addressing Lopez Vega's APS hearing stated: "Your request does not include any facts specific to this request to

14.

support good cause showing that you informed the court of this pending Admin Per Se hearing, or what diligent effort you made to avoid this conflict. If you did inform the court of the scheduling conflict, what was the response?"

On April 16, 2019, Attorney Middlebrook's office faxed separate letters to the DMV responding to the denials and providing a history of the Campbell case's pretrial hearings scheduled in April, June, August and November of 2018 and the April 5, 2019 pretrial hearing. The letter asserted the April 5, 2019 pretrial hearing was when "we first learned that the case would be going to trial" and, upon becoming aware of the impending trial, "we sent a request for continuance" of the APS hearings. The letters also stated, "our office does not have the ability to predict the future, read the minds of the Deputy District Attorneys, or control the rulings and orders of a Superior Court Judge."

On April 17, 2019, the DMV responded with letters stating the online docket for the Alexander and Campbell cases showed the trials were continued from April 15, 2019, to April 29, 2019 and counsel was expected to appear for APS hearings at the previously scheduled date and times. Later that day, Attorney Middlebrook's office faxed separate letters to the DMV acknowledging the accuracy of the information about the Alexander and Campbell cases and requesting a continuance based on 17 pretrial hearings scheduled for April 19, 2019. The letters stated that the superior court provides a date for continued matters and "we do not have a choice but to appear on those dates or our clients will suffer the consequence of Bench Warrant being issued for their arrest." The letters also stated: "While our office has brought up the issue of DMV Hearings and potential conflict, the response from not only Judge Organ-Bowles, but also Judge Zulfa, and Judge Wyatt, has been that the DMV has no influence or bearing on the Superior Court's calendar management."

On April 18, 2019, the DMV responded with letters denying the requests for a continuance and stating good cause was not demonstrated because (1) the pretrial hearings were all scheduled for 8:30 a.m. and would not conflict with the APS hearings

15.

set in the afternoon, (2) the hearing officers had learned that Attorney Middlebrook was out of the country, and (3) his office had recently scheduled ex parte hearings for April 19, 2019, at 1:30 p.m. in the Kern County Superior Court.

On April 19, 2019, at approximately 7:57 a.m., Attorney LaCarre faxed letters to the DMV asserting the conflict with the pretrial hearings only after the trials had been continued and the pretrial hearings were able to proceed. The letter confirmed that Attorney Middlebrook was out of the country, stated Attorney LaCarre would handle the court appearances, and asserted that 12 ex parte hearings before Judge Lampe involved writ proceedings by other drivers whose continuance requests were denied and sought to stay of the DMV's orders suspending their licenses pending the outcome of the writ proceedings.

At 12:23 p.m. on April 19, 2019, the DMV faxed Attorney Middlebrook's office a letter denying the request to continue Mody's APS hearing. At 1:21 p.m., the DMV faxed a similar letter denying the request to continue Lopez Vega's APS hearing. The letters stated the conflicts cited were of counsel's own making and do not demonstrate good cause.

On April 19, 2019, Hearing Officer Boone signed and mailed a notification of findings and decision stating Mody's APS hearing had been held on April 19, 2019, Mody and his representative did not appear at the hearing, and the four continuance requests had been denied for lack of good cause. The decision found (1) the peace officer had reasonable cause to believe Mody was driving under the influence, (2) the arrest was lawful, and (3) Mody had driven a motor vehicle with a BAC of .08 percent or more. Accordingly, the decision reimposed the suspension of Mody's driving privilege.

On April 30, 2019, Hearing Officer Witt signed and mailed a notification of findings and decision stating Lopez Vega's APS hearing had been held on April 30, 2019, Lopez Vega and her representative did not appear at the hearing, and continuance requests had been denied cause. The decision found the DMV's evidence had proven the

16.

three criteria for upholding the suspension order.  Accordingly, the decision reimposed the suspension of Lopez Vega's driving privilege.

Mody and Lopez Vega filed petitions for writ of mandate on April 24, 2019.

**PROCEEDINGS**

The Drivers filed petitions for writ of mandate in the superior court pursuant to Vehicle Code section 13559, asserting the suspensions were invalid because the DMV hearing officer abused his or her discretion by denying the requested continuances.  The first writ petitions were filed on February 4, 2019, and the last of the Drivers' writ petitions were filed on April 24, 2019.  The DMV's answers contained a general denial, stated its decision was not an abuse of discretion, asserted the request for a continuance was untimely, and (in some cases) stated the writ petition was time barred.  The superior court consolidated the Drivers' writ proceedings under *Cisneros v. Department of Motor Vehicles*, Kern County Superior Court case No. BCV-19-100294.

*Superior Court's Decision*

The consolidated cases were tried on December 5 and 6, 2019.  In January 2020, the superior court issued a written tentative decision, directed the parties to simultaneously file posttrial briefs, and stated the matter would be deemed submitted on the briefing deadline.

The superior court's tentative decision included a section setting forth its analysis of legal issues applicable to all the consolidated cases.  The court determined that the provisions of section 11524 governed the APS hearings, "as far as applicable" pursuant to Vehicle Code section 14112, subdivision (a).  The court also stated that subdivision (b) of section 11524 required a party seeking a continuance to be diligent and demonstrate good cause for a continuance.

In addition, the tentative decision stated the Drivers were not subject to the 10-day limitation period in section 11524, subdivision (c) for seeking judicial relief from a denial of a continuance of certain types of state agency hearings.  The tentative decision quoted

17.

the statutory text referring to a continuance "denied by an administrative law judge of the Office of Administrative Hearings" (§ 11524, subd. (c)) and stated the DMV hearing officers were not administrative law judges. As a result, the tentative decision concluded subdivision (c) of section 11524 did not apply, and the Drivers' writ petitions were subject to the 30-day limitation period in Vehicle Code section 13559, subdivision (a). In February 2020, after considering the final round of briefing, the superior court issued a ruling adopting its tentative decision.

Here, we set forth the superior court's reasoning for denying the writ petitions of Granados, Reese, Carter, Datiz, Mody and Lopez Vega. Details about those Drivers' requests for continuances and the DMV's denial of the requests were set forth in the FACTS section. In denying the writ petitions of these Drivers, the superior court stated the denials of their requests to continue their APS hearings "did not exceed the hearing officer's authority. Denying the continuance was not arbitrary, capricious or an abuse of discretion."

The superior court explained the denial of Granados's writ petition by stating the Bravo trail was the only basis stated in the first request to continue the January 17, 2019 APS hearing and, when that trial was continued, the hearing officer understandably expected the APS hearing to proceed as scheduled. The court also stated the "subsequent, last-minute request to continue the APS hearing was based on matters that could have been, but were not, previously disclosed to the DMV hearing officer. [Granados] unreasonably delayed in seeking the continuance and failed to show good cause."

The superior court explained its denial of the writ petitions of Reese and two other Drivers with APS hearings scheduled for January 23, 2019, by stating the Bravo trial was the only basis stated in their first request, the hearing officer understandably expected the January 23, 2019 hearing to proceed when the Bravo trial was continued, their subsequent requests were based on counsel's expected involvement in the Orozco and Minton trial, and the denial of those requests were proper and within the hearing officer's

18.

discretion because Reese unreasonably delayed in seeking the continuance and failed to show good cause.

The superior court explained its denial of the writ petitions of Carter, Mody and Lopez Vega and its conclusion that the hearing officers did not abuse their discretion by stating the Drivers "unreasonably delayed in seeking the continuance and failed to show good cause. *Gov. Code § 11524(b)*." The court's ruling on Datiz's writ petition stated that Datiz's counsel apparently scheduled the court hearing knowing the April 18, 2019 APS hearing was already scheduled, it was unlikely the hearing would consume the full day (particularly for a misdemeanor case), and no explanation was offered for why it would. Thus, the court concluded Datiz "unreasonably delayed in seeking the continuance and failed to show good cause."

On June 4, 2020, the superior court filed a "JUDGMENT IN CONSOLIDATED MATTERS" to implement its ruling. In 22 of the cases, the petition for writ of mandate was granted, the DMV was directed to conduct a new administrative hearing, and judgment was entered in favor of the Driver. In 17 of those cases, the court awarded the prevailing Driver attorney fees pursuant to section 800 in an amount to be determined upon filing an appropriate motion. The DMV appealed from the judgment, challenging the award of attorney fees to the 17 prevailing Drivers. This court assigned the DMV's appeal case No. F081372.

The judgment denied the 51 writ petitions of the Drivers. The Drivers appealed the denials of their writ petitions and the matter was assigned case No. F081373.

*Stage One*

In August 2020, the DMV requested that the appeals in case Nos. F081372 and F081373 be consolidated and decided in two stages, with the first stage addressing whether section 11524, subdivision (c)'s 10-day time limit for seeking judicial review of an administrative law judge's denial of a continuance was applicable to the DMV's APS hearings. The DMV stated the issue appeared to affect 15 cases in the DMV's appeal and

19.

22 cases in the Drivers' appeal and that resolving the timeliness issue could significantly streamline briefing the merits. After obtaining further information from the parties, this court consolidated to two appeals and established a briefing schedule for the first stage.

In July 2021, the briefing of the first stage was complete. The parties requested oral argument, which was held in April 2022. On April 8, 2022, we filed an order and tentative decision stating (1) the 10-day time limit in section 11524, subdivision (c) did not apply to the Drivers' writ petitions; (2) that statutory interpretation would control for the remainder of the appeal; and (3) the final opinion issued after the second stage would include that statutory interpretation, which would allow the DMV to challenge that interpretation in a petition for review of the final opinion.

*Stage Two*

After the parties were unable to agree on a joint record for the second stage, we vacated the consolidation order. As a result, the appellants in each appeal were responsible for preparing a record adequate to support their claims of error. The Drivers' appeal proceeded under case No. F081373 and briefing in that appeal was completed in October 2023. Parts I. and II. of this opinion, with some modifications to the analysis, set forth the statutory interpretation adopted in our April 2022 order and tentative decision.

## DISCUSSION

### I. STATUTORY CONSTRUCTION

The interpretation of section 11524, subdivision (c) presents a question of law subject to de novo review on appeal. (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190.) The parties agree the de novo standard of review applies.

The principles applied when interpreting California statutes are well established. (*People v. Castillolopez* (2016) 63 Cal.4th 322, 329.) A court's " 'role in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " (*Ibid*.) Courts " 'look first at the words themselves, giving them their usual and

20.

ordinary meaning' " because statutory language generally is the most reliable indicator of that intent. (*Ibid*.)

When the statutory language is clear and unambiguous, there usually is no need for further construction and courts adopt the plain (i.e., literal) meaning of that language. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 (*Lungren*).) "If the language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls." (*People v. Hudson* (2006) 38 Cal.4th 1002, 1009.) In this context, ambiguous means susceptible to more than one reasonable interpretation. (*Honchariw v. County of Stanislaus* (2013) 218 Cal.App.4th 1019, 1027.)

The plain meaning rule is not absolute. (*Lungren*, *supra*, 45 Cal.3d at p. 735.) A court must consider whether adopting the literal meaning of the statutory text (1) would frustrate the manifest purposes that appear from the provisions of the legislation when considered as a whole in light of its legislative history or (2) would result in absurd consequences that the Legislature clearly did not intend. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 979 [literal construction will not control when it frustrates manifest purpose of enactment as a whole]; *Smith v. LoanMe, Inc.*, *supra*, 11 Cal.5th at p. 190 [plain meaning followed unless it results in absurd consequences]; *Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.* (1994) 7 Cal.4th 561, 567 [plain meaning of constitutional provision rejected to avoid absurdity].) Thus, a literal construction that leads to absurd results may be rejected for a construction that furthers the legislative intent apparent in the statute. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 245.)

Whether statutory language is ambiguous or, alternatively, has a plain meaning, is a question of law subject to independent review on appeal. (*Wells Fargo Bank, N.A. v. 6354 Figarden General Partnership* (2015) 238 Cal.App.4th 370, 381.) When statutory language is susceptible to more than one reasonable interpretation, courts must select the construction that comports most closely with the apparent intent of the Legislature, with a

view to promoting rather than defeating the general purpose of the statute. (*Ibid.*) The apparent intent of the Legislature is determined by reading the ambiguous language in light of the statutory scheme rather than reading it in isolation. (*Lungren*, *supra*, 45 Cal.3d at p. 735.) Stated another way, the ambiguous language must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. (*Ibid.*) In addition, courts determine the apparent intent underlying ambiguous statutory language by evaluating a variety of extrinsic aids, including the ostensible objects to be achieved by the statute, the evils to be remedied, public policy, and the statute's legislative history. (*Wells Fargo*, *supra*, at p. 381.)

II.      LIMITATION PERIOD FOR DENIALS OF CONTINUANCES

       A.      <u>APS Proceedings</u>

The DMV is required by statute to immediately suspend the driver's license of a person who is over 21 years of age and drives with a BAC of .08 percent or more, by weight. (Veh. Code, § 13353.2, subd. (a)(1).) Lower BAC levels apply to younger drivers. (Veh. Code, § 13557, subd. (b)(3)(C); *Brown v. Valverde* (2010) 183 Cal.App.4th 1531, 1537, fn. 1.) "When a driver is arrested for driving under the influence and is determined to have a prohibited [BAC], the arresting officer or the DMV serves the driver with a 'notice of [an] order of suspension or revocation' of his or her driver's license, advising that the suspension will become effective 30 days from the date of service. (Veh. Code, §§ 13353.2, subds. (b) & (c), 13353.3, subd. (a).) The notice explains the driver's right to an [APS] hearing before the effective date of the suspension if the driver requests a hearing within 10 days of receipt of the notice. (*Id.*, §§ 13353.2, subd. (c); 13558, subd. (b).)" (*Brown*, *supra*, at pp. 1536–1537.)

At the APS hearing, the hearing officer determines whether three facts have been proven by a preponderance of the evidence—specifically, did the arresting officer have reasonable cause to believe the person was driving under the influence or with a prohibited BAC; was the driver arrested; and did the person drive with a prohibited BAC.

(*Brown v. Valverde, supra*, 183 Cal.App.4th at pp. 1537–1538; Veh. Code, §§ 13557, subd. (b)(2), 13558, subd. (c)(1).)  If the hearing officer determines these three facts are established by the evidence, the license will be suspended.  The DMV's notice to a driver that the order of suspension or revocation has been sustained must "include notice that the person has a right to review by court pursuant to [Vehicle Code s]ection 13559." (Veh. Code, § 13558, subd. (f).)

When a person exercises his or her right to an APS hearing pursuant to Vehicle Code section 13558, the hearing is conducted pursuant to the requirements in Vehicle Code sections 14100 through 14106.  For instance, an APS "hearing shall be conducted by the director or by a hearing officer or hearing board appointed by him or her from officers or employees of the department."  (Veh. Code, § 14104.2, subd. (a).)  Vehicle Code sections 14100 through 14106 do not address all procedural aspects of an APS hearing.  To fill the gaps, "[a]ll matters in a hearing not covered by this chapter shall be governed, as far as applicable, by Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code."  (Veh. Code, § 14112, subd. (a).)  The chapter referred to is contained in California's Administrative Procedure Act (APA; § 11340 et seq.) and addresses agency adjudicative proceedings that involve a formal hearing.  The "chapter applies to any agency as determined by the statutes relating to that agency."  (§ 11501, subd. (a).)  Therefore, chapter 5 of the APA applies to APS proceedings to the extent specified in Vehicle Code section 14112.

B.  Statutory Text

One procedural aspect of APS proceedings not addressed in the Vehicle Code is continuances of the hearing.  Chapter 5 of the APA, however, addresses continuances in section 11524, which provides in full:

> "(a) The *agency* may grant continuances.  When an *administrative law judge* of the Office of Administrative Hearings has been assigned to the hearing, no continuance may be granted except by him or her or by the

23.

presiding judge of the appropriate regional office of the Office of Administrative Hearings, for good cause shown.

"(b) When seeking a continuance, a party shall apply for the continuance within 10 working days following the time the party discovered or reasonably should have discovered the event or occurrence which establishes the good cause for the continuance. A continuance may be granted for good cause after the 10 working days have lapsed if the party seeking the continuance is not responsible for and has made a good faith effort to prevent the condition or event establishing the good cause.

"(c) In the event that an application for a continuance by a party is denied by an *administrative law judge* of the Office of Administrative Hearings, and the party seeks judicial review thereof, the party shall, within 10 working days of the denial, make application for appropriate judicial relief in the superior court or be barred from judicial review thereof as a matter of jurisdiction. A party applying for judicial relief from the denial shall give notice to the *agency* and other parties. Notwithstanding Section 1010 of the Code of Civil Procedure, the notice may be either oral at the time of the denial of application for a continuance or written at the same time application is made in court for judicial relief. This subdivision does not apply to the Department of Alcoholic Beverage Control." (§ 11524, italics added.)

The word "agency" and the term "administrative law judge" are italicized in the foregoing quote because they are defined by statute. " 'Agency' includes the state boards, commissions, and officers to which this chapter is made applicable by law." (§ 11500, subd. (a).) There is no dispute that the DMV is an agency for purposes of chapter 5 of the APA.

" 'Administrative law judge' means an individual qualified under Section 11502." (§ 11500, subd. (d).) Section 11502, subdivision (a) refers to "administrative law judges on the staff of the Office of Administrative Hearings." The director of the Office of Administrative Hearings is authorized to appoint a staff of administrative law judges. (§ 11502, subd. (b); see § 11370.3.) "Each administrative law judge shall have been admitted to practice law in this state for at least five years immediately preceding his or her appointment and shall possess any additional qualifications established by the State Personnel Board for the particular class of position involved." (§ 11502, subd. (b).)

The DMV's regulations also address continuances. California Code of Regulations, title 13, section 115.08 provides in part: "(b) Except as provided in subdivision (d), a motion to continue a case shall be made pursuant to Section 11524 of the Government Code." The regulation's provisions that apply to all types of motions state: "(c) Any motion shall state in plain language the relief sought and the facts and circumstances the moving party contends support the motion, and shall be supported by legal authority. [¶] (d) A motion shall be made and filed at least 5 business days before the date set for the commencement of the hearing."

C.     Plain Meaning

We conclude the language in subdivision (c) of section 11524 has a plain meaning on the question of whether judicial review of the DMV's denial of a continuance must be sought within 10 working days of the denial. That subdivision applies only when the continuance "is denied by an administrative law judge of the Office of Administrative Hearings." Because a DMV hearing officer does not satisfy the definition of "[a]dministrative law judge" set forth in section 11500, subdivision (d), a denial of a continuance by a DMV hearing officer falls outside the express terms of subdivision (c) of section 11524.

Courts usually adopt the plain meaning of the statute, unless a literal "construction would frustrate the manifest purpose of the enactment as a whole" (*Arias v. Superior Court*, *supra*, 46 Cal.4th at p. 979) or "would result in absurd consequences the Legislature did not intend" (*Smith v. LoanMe, Inc.*, *supra*, 11 Cal.5th at p. 190). Consequently, the next steps of our analysis consider whether either exception to the plain meaning rule applies.

D.     The Plain Meaning Does Not Produce Absurdities

The DMV contends that construing section 11524, subdivision (c) as applying only to continuance requests "denied by an administrative law judge of the Office of Administrative Hearings" would make no sense and lead to an absurd result. In the

25.

DMV's view, if subdivision (c) applies only in proceedings decided by an administrative law judge of the Office of Administrative Hearings, then only subdivision (b) would apply to DMV hearings, and not subdivision (a), which also contains language referring to an administrative law judge of the Office of Administrative Hearings.

We reject this reading of the statute. The first sentence of section 11524, subdivision (a) states in full: "The agency may grant continuances." The DMV is an agency and, thus, this sentence authorizes the DMV to grant continuances of APS hearings. Vehicle Code section 14112, subdivision (a) provides that all matters in an APS hearing not covered by the Vehicle Code "shall be governed, as far as applicable, by Chapter 5" of the APA. Nothing in the wording of the first sentence of subdivision (a) of section 11524 makes it inapplicable to APS hearings. In contrast, the second sentence of the subdivision refers to situations "[w]hen an administrative law judge of the Office of Administrative Hearings has been assigned to the hearing." (§ 11524, subd. (a).) Because an "administrative law judge of the Office of Administrative Hearings" is not assigned to an APS hearing, that sentence is not applicable to APS hearings.

We conclude the foregoing interpretation of section 11524 is not absurd. The authority to grant continuances is given to the DMV by the first sentence of subdivision (a). The first sentence, without the remainder of the subdivision, can be applied without leading to an absurd result. The second sentence, which states that when an administrative law judge has been assigned to a hearing, only he or she may grant a continuance of the hearing, is not essential to avoid absurdity. For instance, the absence of an explicit limitation on continuances of APS hearings leaves open the possibility that such a hearing could be continued by a DMV employee other than the hearing officer. (See Veh. Code, § 14104.2, subd. (a) [who conducts an APS hearing].) Without an explicit provision limiting the authority to grant continuances to hearing officers, the DMV retains flexibility, subject to the constraints of due process. For example, if a hearing officer becomes temporarily incapacitated, the appointment of a new hearing

officer in each case assigned to the incapacitated hearing officer would not be required before those cases could be continued. This flexibility would avoid the additional formality for removing the new hearing officer and reappointing the original hearing officer to the continued cases once he or she returns to work.

DMV's July 2021 reply brief addresses absurdity from a different angle, contending its interpretation presents a "sensible statutory framework: Subdivision (a) provides the good cause standard. Subdivision (b) provides procedures for requesting a continuance, and Subdivision (c) provides the procedures for challenging a denial of a continuance." DMV argues Drivers' interpretation produces the absurdity that "DMV hearing officers would have discretion to deny continuances, with neither a standard nor a mechanism for review of any denial of a continuance." DMV contends this is not what the Legislature intended.

The DMV's argument is flawed because it is based on a false premise—namely, that "[t]he 'good cause' standard is only found in the second sentence of Section 11524(a)." The term "good cause" also appears in both sentences of subdivision (b) of section 11524. The first sentence states: "When seeking a continuance, a party shall apply for the continuance within 10 working days following the time the party discovered or reasonably should have discovered the event or occurrence which establishes the *good cause* for the continuance." (§ 11524, subd. (b), italics added.) The second sentence states: "A continuance may be granted for *good cause* after the 10 working days have lapsed if the party seeking the continuance is not responsible for and has made a good faith effort to prevent the condition or event establishing the *good cause*." (§ 11524, subd. (b), italics added.) The three references to "good cause" in subdivision (b) of section 11524 are sufficient to establish good cause as the standard for obtaining a continuance of an APS hearing. (See *Petrus v. Department of Motor Vehicles* (2011) 194 Cal.App.4th 1240, 1244 ["section 11524 provides that a continuance should be granted for good cause shown"]; *Bussard v. Department of Motor Vehicles* (2008) 164

27.

Cal.App.4th 858, 865–864 [continuance of APS hearing may be granted in the discretion of the hearing officer upon a showing of good cause].)[4]  Indeed, the superior court's February 2020 ruling repeatedly cited subdivision (b) of section 11524 as the source of the good cause requirement.  Therefore, the DMV's claim of absurdity lacks merit because it wrongly contends that there would be no statutory standard for granting a continuance if the plain meaning of subdivision (c) of section 11524 is adopted.

Another aspect of the DMV's absurdity argument is that if subdivision (c) of section 11524 does not apply to APS hearings, there would be no procedure for challenging (i.e., obtaining judicial review of) a denial of an application for a continuance of the hearing.  This argument fails because there is a mechanism for obtaining judicial review of the DMV's denial of a continuance.  As explained in part III. of this opinion, relief may be obtained using a petition for writ of ordinary mandamus.  When a request for a continuance is denied and the DMV's findings and decision issued after the hearing, the driver's writ petition can seek ordinary mandate to address the denial of the continuance and seek administrative mandate to address the findings and decision reinstating the suspension or revocation of the license.

This approach is akin to the way a litigant obtains judicial review of a superior court's denial of a continuance in a civil lawsuit.  "A [superior court's] ruling on a motion for a continuance is not an appealable order."  (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527.)  The denial of a requested continuance "is reviewable on appeal

---

[4]      "Good cause" is a flexible term, capable of being expanded or contracted by judicial construction.  (*People v. McGirr* (1988) 198 Cal.App.3d 629, 636.)  Our Supreme Court has stated that a good cause requirement "should not be enshrined in legal formalism."  (*Waters v. Superior Court* (1962) 58 Cal.2d 885, 893.)  The parties have not acknowledged this statement and have not explicitly addressed the threshold legal question of whether the term "good cause" is ambiguous.  (See *People v. Accredited Surety Casualty Co.* (2014) 230 Cal.App.4th 548, 559–560 [term "good cause" used in a bail statute was ambiguous; this court interpreted it to contain an objective component— reasonable grounds—and a subjective component—good faith].)

from the judgment." (*Ibid*.)  Alternatively, when certain requirements are met, a litigant in a civil action need not wait for an appealable judgment but may seek review of a denial of a continuance by filing a petition for a writ of mandate with the appellate court.  (E.g., *Padda v. Superior Court* (2018) 25 Cal.App.5th 25, 26, 30 [equities favored applying settled principles of law to the facts and issuing a writ directing the superior court to grant the continuance].)  These two ways to obtain review of denials of continuances in civil lawsuits convinces us that it is not absurd to allow a driver (1) to, in appropriate circumstances, seek review only of a denial of a continuance request in a writ petition for ordinary mandate or (2) to combine a request for ordinary mandate with a request for administrative mandate in a writ petition timely filed after the findings and decision are issued.  Stated another way, the absence of a provision for immediate judicial review of denials of continuances by hearing officers other than administrative law judges is not absurd in the context of the APS system because judicial review is available in ways that parallels how a superior court's denial of a continuance in a civil lawsuit is reviewed.

E.      The Plain Meaning Is Not Contrary to Section 11524's Manifest Purpose

The DMV's opening brief argues that applying subdivision (c) of section 11524 to APS hearings is consistent with the legislative intent of the statute.  This argument does not carry DMV's burden to affirmatively demonstrate prejudicial error because it does not apply the correct legal standard for rejecting the plain meaning of a statute.  (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [appellant has burden of affirmatively demonstrating prejudicial error].)  For a court to reject the plain meaning of statutory text, it must be presented with more than an alternate interpretation that is consistent with legislative intent.  The proponent of that alternate interpretation must demonstrate that a literal "construction would frustrate the manifest purpose of the enactment as a whole." (*Arias v. Superior Court*, *supra*, 46 Cal.4th at p. 979.)

Applying this standard to the DMV's references to the legislative history presented, we conclude the Legislature did not manifest its intent or purpose to have

section 11524, subdivision (c) apply to APS hearings. First, the DMV has not cited any legislative history with an explicit reference to APS hearings in particular or to the DMV in general. As a result, any conclusion that section 11524, subdivision (c) applies to APS hearings must be based on an inference drawn from the legislative history. Second, the DMV has not cited any legislative history implying that, contrary to its plain meaning, the provision for seeking judicial review of a denial of a continuance applies to all administrative hearings, regardless of whether the hearing is to be conducted by an administrative law judge of the Office of Administrative Hearings. Therefore, nothing in the legislative history makes clear the Legislature intended to have section 11524, subdivision (c) apply to the denial of a continuance of an APS hearing or, more generally, to the denial of a continuance of all administrative hearings conducted by an agency. The possibility that the efficiency concerns underlying the application of section 11524, subdivision (c) to hearings conducted by an administrative law judge of the Office of Administrative Hearings might also apply to hearings conducted by other types of hearing officers does not manifest a legislative intent to include those other types of hearings.

F.     Surplusage Canon

The canons of statutory interpretation aid courts in "ascertain[ing] the intent of the Legislature so as to effectuate the purpose of the law." (*Dyna-Med, Inc. v. Fair Employment & Housing Com*. (1987) 43 Cal.3d 1379, 1387.) One of the canons states that courts generally "accord[] significance, *if possible*, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided." (*Ibid*., italics added.) We italicize the qualification "if possible" because of its significance in this appeal. The canon includes that limitation because sometimes all the potential interpretations of a statute negate some word or phrase of the statutory text. For this and other reasons, our Supreme Court recently reiterated that " 'the canon against surplusage is [merely] a guide to statutory

30.

interpretation and is not invariably controlling.' (*People v. Valencia* (2017) 3 Cal.5th 347, 381.)" (*Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 21.)

Our Supreme Court's statements are consistent with the view expressed in a book addressing the relationship among the various canons of interpretation: "No canon of interpretation is absolute. Each may be overcome by the strength of differing principles that point in other directions." (Scalia & Garner, Reading Law: The Interpretation of Legal Texts (2012) p. 59, boldface omitted, citing *Chickasaw Nation v. United States* (2001) 534 U.S. 84, 93 ["canons are not mandatory rules. They are guides that 'need not be conclusive' "].)

> "Principles of interpretation are guides to solving the puzzle of textual meaning, and as in any good mystery, different clues often point in different directions. It is a rare case in which each side does *not* appeal to a different canon to suggest its desired outcome. The skill of sound construction lies in assessing the clarity and weight of each clue and deciding where the balance lies." (Scalia & Garner, Reading Law: The Interpretation of Legal Texts, *supra*, p. 59.)

For example, "[t]he canon requiring a court to give effect to each word '*if possible*' is sometimes offset by the canon that permits a court to reject words 'as surplusage' if 'inadvertently inserted or if repugnant to the rest of the statute ....' " (*Chickasaw Nation v. United States*, *supra*, 534 U.S. at p. 94.)

In this appeal, the DMV invokes the surplusage canon in reference to the last sentence of section 11524, subdivision (c), which states that "[t]his subdivision does not apply to the Department of Alcoholic Beverage Control." In the DMV's view, the insertion of the specific exemption reveals that, absent that exemption, subdivision (c) would apply to the Department of Alcoholic Beverage Control. The DMV asserts that to give meaning or operative effect to the exemption in the last sentence of subdivision (c), the phrase "denied by an administrative law judge of the Office of Administrative Hearings" must be interpreted to cover administrative hearings of the Department of Alcoholic Beverage Control, even though such hearings are not conducted by an

administrative law judge of the Office of Administrative Hearings. The last step of the DMV's argument asserts that if administrative hearings of the Department of Alcoholic Beverage Control conducted by hearing officers who do not qualify technically as administrative law judges are covered by subdivision (c) and need a specific exemption, then other administrative hearings, such as APS hearings conducted by the DMV, also are covered by subdivision (c).

The DMV's appellate briefing acknowledges that it did not find "any legislative history explaining the Department of Alcoholic Beverage Control exemption in Section 11524(c)." The Drivers state that they were unable to locate any legislative history explaining the exemption. Our independent review of the legislative history did not find an explanation that the parties did not locate.

The DMV's application of the surplusage canon is not convincing because it does not actually result in an interpretation that " 'give[s] meaning to every word and phrase in the statute .…' " (*Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 39.) The DMV's interpretation negates the phrase "of the Office of Administrative Hearings" that modifies "administrative law judge" throughout section 11524 and overrides the definition of "administrative law judge" contained in section 11500, subdivision (d). Consequently, the DMV has not presented an interpretation that satisfies the surplusage canon. Its interpretation simply changes which words are surplusage. It does not appear possible to interpret section 11524 in a manner that gives meaning and effect to every word and phrase in the statute.

Consequently, this court must choose among the interpretations that render some of the statutory language surplusage. We conclude that adopting the plain meaning of the phrase "denied by an administrative law judge of the Office of Administrative Hearings" in subdivision (c) of section 11524 best effectuates the purpose of the statute. This interpretation does not *contradict* the express language of the statute. Instead, it merely

renders the last sentence redundant.[5]  Adopting the plain meaning of the phrase "an administrative law judge of the Office of Administrative Hearings" carries out the intent expressed in the last sentence and excludes hearings of the Department of Alcoholic Beverage Control from subdivision (c) of section 11524.  In other words, it is not the type of interpretation that results in the subdivision being applied to the Department of Alcoholic Beverage Control, which would directly contradict the last sentence.  In contrast, the interpretation offered by the DMV directly contradicts the intent expressed by some of the statutory text by expanding its scope.  An interpretation that contains a redundancy does less violence to the statutory text and is therefore preferred over an interpretation that changes the meaning of some phrases and eliminates others.

In summary, section 11524 governs continuances of APS hearings only "as far as applicable."  (Veh. Code, § 14112, subd. (a).)  The second sentence of subdivision (a) and all of subdivision (c) of section 11524 are not "applicable" to APS hearings because a DMV hearing officer is not an "administrative law judge of the Office of Administrative Hearings."  Consequently, only the first sentence of subdivision (a) and all of subdivision (b) of section 11524 are applicable to APS proceedings.  Thus, the superior court correctly rejected the DMV's argument that section 11524, subdivision (c)'s 10-day period for seeking judicial review of the denial of a continuance applied to the Drivers' writ petitions.

III.    ADMINISTRATIVE AND ORDINARY MANDAMUS PROCEEDINGS

Judicial review of the DMV's decision to sustain an order suspending a driver's license is addressed by statute.  Vehicle code section 13559, subdivision (a) provides that,

---

[5]      Jellum, *Mastering Statutory Interpretation* (2d ed. 2013) 133 ("Statutes are not always carefully drafted.  Legal drafters often intend to include redundant language to cover any unforeseen gaps or they simply fail to identify the redundancy timely .... Thus, the presumptions [underlying the canon] simply do not match political reality."); Posner, *Statutory Interpretation—In the Classroom and in the Courtroom* (1983) 50 U. Chi. L.Rev. 800, 812 ("a statute that is the product of compromise may contain redundant language as a by-product of the strains of the negotiating process.").

after an APS hearing and the DMV's issuance of a notice of determination sustaining an order of suspension or revocation, the driver "may file a petition for review of the order in the court of competent jurisdiction in the person's county of residence." (Veh. Code, § 13559, subd. (a).) The statute does not identify the type of petition.

Generally, a petition for writ of mandate is the proper method of obtaining judicial review of state agency decisions. (1 Cal. Administrative Mandamus (Cont.Ed.Bar 3d ed. 2023) § 1.1, p. 1-1; 1 Cal. Civil Writ Practice (Cont.Ed.Bar 4th ed. 2023) § 1.2, p. 1-1 [most writ petitions seek a writ of mandate].) The term "writ of mandate" is synonymous with "writ of mandamus." (Code Civ. Proc., § 1084.) The Code of Civil Procedure provides for two types of mandate—ordinary mandate, which is sometimes called traditional mandate (Code Civ. Proc., § 1085), and administrative mandate (Code Civ. Proc., § 1094.5). (1 Cal. Civil Writ Practice, *supra*, § 1.2, p. 1-1 [types of writs of mandate]; Johnson & Taylor, California Driving Under the Influence Defense (Thomson Reuters 5th ed. 2023) § 4:20 [judicial review—writ of mandamus].)

The nature of the agency's action or decision under review determines which type of mandate applies. Administrative mandate is used only to review an agency's decision that resulted from "a proceeding in which, by law: (1) *a hearing is required to be given*, (2) evidence is required to be taken, and (3) discretion in the determination of facts is vested in the agency." (*Taylor v. State Personnel Bd.* (1980) 101 Cal.App.3d 498, 502.) In comparison, "ordinary mandate is used to review adjudicatory actions or decisions when the agency was not required to hold an evidentiary hearing." (*Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 848.)

The appropriate type of mandamus for challenging the DMV's decisions was addressed by the parties in the superior court. The Drivers' September 2019 supplemental opening brief referred to both administrative mandamus under Code of Civil Procedure section 1094.5 and ordinary mandamus under Code of Civil Procedure section 1085. The Drivers argued that ordinary mandamus was appropriate to deal with

34.

the DMV's decisions denying their requests for a continuance. The Drivers also asserted that, "to properly flesh out the issues, we need more than the baseline Administrative Record which §1094.5 would allow for. By viewing this collection of consolidated cases through the lens of §1085, we can rely on both the Administrative Records and the essential background built through Declarations, Continuance Request Letters, as well as the responses or failures to respond by the DMV."

The DMV's October 2019 master brief asserted the Drivers' writ petitions were appropriately addressed under Code of Civil Procedure section 1094.5 and referred to the principle that administrative mandamus is used to review a decision resulting " 'from a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the agency.' (*De Cuir v. County of Los Angeles* (1998) 64 Cal.App.4th 75, 81.)" The DMV argued that ordinary mandamus under Code of Civil Procedure section 1085 was appropriate only to challenge a failure to perform an act required by law other than at an administrative hearing. The DMV asserted *De Cuir* provides that administrative mandamus "also applies to the <u>denial</u> of a hearing (as here, with denied continuances)." Alternatively, the DMV stated that "it matters little whether the Court decides this under either the rubric of section 1094.5 or section 1085" because each Driver had failed to satisfy the requirements for a continuance and, thus, was not entitled to a new APS hearing.

A.     <u>Suspension Orders Are Reviewed Under Administrative Mandate</u>

A decision by the DMV to sustain an order of suspension or revocation after an APS hearing meets the three criteria for review by administrative mandate. (See *Taylor v. State Personnel Bd.*, *supra*, 101 Cal.App.3d at p. 502.) Consequently, it is well established that administrative mandate is used to obtain judicial review of a license suspension order. (*Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395; *Music v. Department of Motor Vehicles* (1990) 221 Cal.App.3d 841, 843, fn. 2.) Suspension or revocation of an issued driver's license affects a vested, fundamental right

35.

and, as a result, a superior court must exercise independent judgment upon the evidence when reviewing such an order. (*Berlinghieri*, *supra*, at p. 395; *Munro v. Department of Motor Vehicles* (2018) 21 Cal.App.5th 41, 46; see Code of Civ. Proc., § 1094.5, subd. (c).)

B.     Orders Denying a Continuance Are Reviewed Under Ordinary Mandate

In contrast, a decision by the DMV to deny a request to continue an APS hearing does not meet all three criteria for review by administrative mandate because a hearing on the request is not required by law. Nothing in section 11524 requires the DMV to hold a hearing before ruling on a request for a continuance. California Code of Regulations, title 13, section 115.08, subdivision (e) provides in part: "A motion filed pursuant to this section may be decided by the department without oral argument." Based on this regulatory provision and the absence of a statutory provision to the contrary, we conclude the DMV is not required to hold a hearing before deciding whether to continue an APS hearing. This interpretation is consistent with the record, which shows the DMV ruled on many continuance requests without holding a hearing. Accordingly, the DMV's orders denying a request to continue an APS hearing are reviewable under ordinary mandate. (Code Civ. Proc., § 1085.)

IV.     THE APS PROCEEDINGS

A.     The Due Process Violations

In *California DUI Lawyers Assn. v. Department of Motor Vehicles* (2018) 20 Cal.App.5th 1247 (*DUI Lawyers I*), a lawyers association (association) brought a taxpayer action against the DMV, alleging drivers' rights to procedural due process were violated by (1) hearing officers at APS hearings acting as both advocates for the DMV and as the triers of fact and (2) by allowing DMV managers ex parte communications with hearing officers and direct control over their decisionmaking process. (*Id*. at p. 1252.) The trial court granted the DMV's motion for summary judgment, concluding that the association lacked taxpayer standing and thus could not pursue its claims. On appeal,

the Second District disagreed, concluding the association, as a group of taxpayers, had standing to assert a government entity was engaging in waste by implementing and maintaining a hearing system that violated drivers' due process rights. (*Ibid*.) As a result, it reversed the judgment and remanded for further proceedings. (*Id*. at p. 1266.)

On remand, the trial court addressed the merits of the parties' motions for summary adjudication. (*DUI Lawyers II*, *supra*, 77 Cal.App.5th at p. 524.) The motions dealt with the association's three causes of action, which alleged (1) a violation of 42 United States Code section 1983 affecting federal due process rights; (2) a violation of state due process rights under article I, section 7 of the California Constitution; and (3) an "illegal expenditure of funds" under Code of Civil Procedure section 526a. (*DUI Lawyers II*, *supra*, at p. 523.) The association "alleged that both the lack of a neutral hearing officer, and the ex parte communications between DMV managers and hearing officers" caused the violations. (*Ibid*.)

The trial court granted the DMV's motion for summary adjudication of the federal cause of action, concluding " 'the DMV hearing officer's dual role as advocate for the DMV and trier of fact does not violate due process.' " (*DUI Lawyers II*, *supra*, 77 Cal.App.5th at p. 524.) In contrast, the trial court granted the association's motion for summary adjudication of the two state law causes of action, concluding the structural design allowing ex parte managerial interference with the hearing officer's decisionmaking violated due process under the California Constitution and, therefore, constituted waste in violation of Code of Civil Procedure section 526a. (*DUI Lawyers II*, *supra*, at p. 524.) Based on these determinations, the trial court entered a judgment on March 9, 2020 that enjoined the DMV from maintaining or implementing a structure allowing managerial interference with hearing officers' decisionmaking through " 'ex parte communications or command control' " and that found the association was the prevailing party entitled to recover attorney fees. (*Ibid*.)

The grant of the permanent injunction prohibiting ex parte communications was not appealed by the DMV. (*DUI Lawyers II*, *supra*, 77 Cal.App.5th at p. 527, fn. 3.) The determination that the hearing officer's dual role did not violate due process rights was appealed by the association. After reviewing the case law addressing the due process implications of an agency combining the roles of advocate and adjudicator, the Second District concluded:

> "Although procedural fairness does not prohibit the combination of the advocacy and adjudicatory functions within a single administrative agency, tasking the same individual with both roles violates the minimum constitutional standards of due process. The irreconcilable conflict between advocating for the agency on one hand, and being an impartial decision maker on the other, presents a ' "particular combination of circumstances creating an unacceptable risk of bias." ' " (*DUI Lawyers II*, *supra*, 77 Cal.App.5th at p. 532.)

Applying these principles, the Second District concluded that "the lack of neutral hearing officers at APS hearings violates drivers' federal and state due process rights." (*Id*. at pp. 530, 535.)

The court also considered the association's contention that it should have prevailed on its federal cause of action and concluded the trial court's unchallenged determination "that the DMV's structural design allowing for ex parte managerial interference with the hearing officers' decisionmaking violates due process under the California Constitution" also identified a violation of the Fourteenth Amendment. (*DUI Lawyers II*, *supra*, 77 Cal.App.5th at p. 535, fn. 6.) Based on the two types of due process violations, the court concluded the association had established its federal claim under 42 United States Code section 1983. (*DUI Lawyers II, supra,* at p. 535.) Accordingly, the Second District directed the trial court to grant the association's motion and enter judgment in the association's favor on all three causes of action. (*Id*. at pp. 530, 538.) The Second District directed the entry of a modified judgment that, in addition to permanently enjoining ex parte communications, "permanently enjoined and restrained [the DMV]

from having its APS hearing officers function as advocates for the position of the DMV in addition to being finders of fact in the same adversarial proceeding." (*Ibid*.)

On July 20, 2022, the California Supreme Court denied the DMV's request to depublish *DUI Lawyers II* and stated the matter was final. (*Knudsen v. Department of Motor Vehicles* (2024) 101 Cal.App.5th 185, 199, fn. 3] (*Knudsen*).)

B.    Forfeiture of Due Process Violation[*]

The Drivers contend *DUI Lawyers II* should be applied retroactively to their cases and the DMV's denials of their continuances vacated because of the due process violations identified in that decision. The DMV contends the Drivers waived the due process violations found in *DUI Lawyers II* because the Drivers' counsel had notice of those issues and failed to raise them (1) in the administrative proceedings or (2) in the mandamus proceedings filed in the superior court in 2019. In reply, the Drivers argue the legal issue should not be deemed waived or forfeited because the law does not encourage fruitless objections and, at the administrative level, an agency cannot independently declare a statute unconstitutional. (See Cal. Const., art. III, § 3.5, subd. (a).)

On a point of terminology, we note that " 'waiver' " and " 'forfeiture' " sometimes are used interchangeably. (*People v. Simon* (2001) 25 Cal.4th 1082, 1097, fn. 9.) When used in a precise technical sense, waiver refers to the intentional relinquishment or abandonment of a known right. (*Ibid*.) In comparison, a forfeiture results from the failure to make a timely assertion of a right or objection. (*Ibid*.) Here, the DMV's argument is not based on the Drivers' intent but is based on the failure to raise the objection below. Consequently, we "shall refer to the issue as one of forfeiture." (*Ibid*.)

1.    *Administrative Proceedings*

After oral argument in this appeal, we filed an opinion in another case determining that the failure to raise the due process violations identified in *DUI Lawyers II* in an APS

---

[*]    See footnote, *ante,* page 1.

proceeding is excused because raising that objection would have been futile. (*Knudsen*, *supra*, 101 Cal.App.5th at pp. 196–197; see also, Cal. Const., art. III, § 3.5.) Based on that precedent, we conclude the Drivers did not forfeit the due process challenges by failing to raise them at the administrative level.[6]

### 2. *Superior Court Proceedings*

As a general rule, issues not raised in the trial court cannot be raised for the first time on appeal. (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.) Thus, "[a] party typically forfeits constitutional issues not raised in earlier civil proceedings." (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 958.) The general rule against new issues on appeal is subject to an exception that grants appellate courts the discretion to address such issues that involve only a legal question determinable from facts that are (1) uncontroverted in the record and (2) could not have been altered by the presentation of additional evidence. (*Esparza v. KS Industries, L.P.* (2017) 13 Cal.App.5th 1228, 1237–1238; *Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167.) In addition, appellate courts traditionally excuse parties for failing to raise an issue in the trial court where an objection would have been futile or wholly unsupported by existing substantive law. (*People v. Brooks* (2017) 3 Cal.5th 1, 92; see *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 376.) Accordingly, in the context of evidentiary objections during trial, our Supreme Court has excused the failure

---

[6]    The discussion in *Ramirez v.* [*Department of Motor Vehicles*] (2023) 88 Cal.App.5th 1313, does not expressly or impliedly conclude otherwise. In that discussion, we stated the driver had failed to raise the due process violation found in *DUI Lawyers II* in the APS proceedings and recited the general rule that an issue not raised at an administrative hearing may not be raised in later judicial proceedings. (*Ramirez*, *supra*, at p. 1336.) The DMV first raised that general rule in its appellant's reply brief and, therefore, the driver had no opportunity to brief the rule's application or its exceptions. Thus, we did not actually rely on the rule in deciding not to address the constitutional violations found in *DUI Lawyers II* as an alternate ground for upholding the judgment entered in the driver's favor. Accordingly, *Ramirez* should not be interpreted as holding the due process violations found in *DUI Lawyers II* are forfeited if not raised during the APS proceedings.

to object where requiring an objection " ' " ' "would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule of evidence would be changed on appeal." ' " ' " (*People v. Perez* (2020) 9 Cal.5th 1, 8.)[7]

Initially, we note the due process violations identified in *DUI Lawyers II* were not completely unforeseeable because *DUI Lawyers I*, *supra*, 20 Cal.App.5th 1247 had been filed in 2018 and it notified the public that the due process claims would be addressed on remand. Thus, it was possible that those claims would eventually be successful. Next, we consider the likelihood that the superior court would have anticipated the Second District's 2020 decision and declared Vehicle Code section 14112, subdivision (b) unconstitutional. (See *DUI Lawyers II*, *supra*, 77 Cal.App.5th at p. 533.) We estimate that in Drivers' consolidated cases it was likely the superior court would have determined the statute, which had been in place for over two decades, was constitutional. As a result, it was likely that raising the due process issues before the superior court would have accomplished nothing. This probable result is a factor that weighs in favor of exercising our discretionary authority and considering the issue on appeal. In addition, the systemic due process violations identified in *DUI Lawyers II* qualify for the discretionary exception to the general rule of forfeiture because the situation presented in this appeal does not involve a procedural error that "could easily have been corrected" had it been raised in the superior court proceedings. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1.) The APS proceedings had been completed and it was too late for the DMV to alter the procedures followed. Consequently, we will exercise that

---

[7] California's approach to exceptions is similar, though not identical, to that adopted by federal appellate courts. Federal decisions have recognized "narrow and discretionary exceptions to the general rule against considering issues for the first time on appeal. They are (1) when review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a change in law raises a new issue while an appeal is pending, and (3) when the issue is purely one of law." (*Jovanovich v. United States* (9th Cir. 1987) 813 F.2d 1035, 1037.)

discretionary authority and allow the due process violations to be raised in this appeal. (See *Redevelopment Agency v. City of Berkeley*, *supra*, 80 Cal.App.3d at p. 167 [applying the exception to the general rule is "largely a question of the appellate court's discretion"].)

C. Retroactivity*

Even though the Drivers did not anticipate the due process violations found in *DUI Lawyers II* and raise them during the proceedings in the superior court, we will exercise our discretion and consider whether to retroactively apply that decision to the Drivers' APS proceedings. The DMV acknowledges that judicial decisions usually are applied retroactively, but contends we should apply the " 'recognized exception when a judicial decision changes a settled rule on which the parties below have relied.' " (*Claxton v. Waters* (2004) 34 Cal.4th 367, 378.) As explained below, we conclude the general rule applies and *DUI Lawyers II*'s conclusion that the APS system violated federal and state due process should be applied retroactively in cases without a final judgment.[8]

1. *Principles Governing Retroactivity*

"As a general rule a decision of a court overruling a prior decision or invalidating a statute will be given full retroactive effect." (*Barber v. State Personnel Bd.* (1976) 18 Cal.3d 395, 400.) This general rule has been described as "basic in our legal tradition" and " 'familiar to every law student.' " (*Newman v. Emerson Radio Corp.* (1989) 48

---

\* See footnote, *ante,* page 1.

[8] In *Knudsen*, *supra*, 101 Cal.App.5th 186, we applied *DUI Lawyers II's* due process conclusions to an APS hearing held in February 2022, about two months before the opinion in *DUI Lawyers II* was filed and over five months before that decision was final. In *Knudsen*, the DMV did not argue *DUI Lawyers II* should not be applied retroactively to an APS hearing held before that opinion was filed. Thus, *Knudsen* did not address the retroactivity question.

Cal.3d 973, 978 (*Newman*).) "This rule of retroactivity, however, has not been an absolute one." (*Id*. at p. 979.)

Our Supreme Court has "long recognized the potential for allowing narrow exceptions to the general rule of retroactivity when considerations of fairness and public policy are so compelling in a particular case that, on balance, they outweigh the considerations that underlie the basic rule." (*Newman, supra,* 48 Cal.3d at p. 983.) The court also recognized that "California cases have used a variety of formulations in approaching the question of whether departure from the general rule of retroactivity is appropriate in a particular case." (*Id*. at p. 985.) In our view, this variety results from courts deciding legal questions in many different contexts where the rules of law reflect different underlying public policies. For example, the public policies implicated when a judicial decision overrules a prior decision on a question of tort law are different from the policies involved when a judicial decision establishes a new rule for the conduct of criminal prosecutions. (See *In re Milton* (2022) 13 Cal.5th 893, 904 [federal and state tests for retroactivity of judicial decisions that announce new procedural or substantive rules for criminal cases]; *Newman*, *supra*, at pp. 980–984 [overview of retroactivity of judicially made tort law].)

To guide the determination of whether "considerations of fairness and public policy" justify a departing from the usual rule of retroactivity, the Supreme Court has identified particularly relevant considerations. (*Woods v. Young* (1991) 53 Cal.3d 315, 330.) They include, but are not limited to, "the reasonableness of the parties' reliance on the former rule, the nature of the change as substantive or procedural, retroactivity's effect on the administration of justice, and the purposes to be served by the new rule." (*Ibid*.; accord *Claxton v. Waters, supra,* 34 Cal.4th at pp. 378–379; *Woodworth v. Loma Linda University Medical Center* (2023) 93 Cal.App.5th 1038, 1058.)

Before we begin analyzing the considerations of fairness and public policy implicated in this appeal, we consider whether there is a rule of law stating that, in

43.

noncriminal cases, a judicial decision concluding a statute is *unconstitutional* must be given retroactive effect or, alternatively, is more likely to be given retroactive effect than a judicial decision reinterpreting a statute or invalidating it on nonconstitutional grounds. The existence of such a rule or guideline is suggested by the importance of the United States Constitution and the California Constitution in the hierarchy of our laws and by the apparently rigid rule adopted in *Griffith v. Kentucky* (1987) 479 U.S. 314. In *Griffith*, the United States Supreme Courts proclaimed that "a new [federal constitutional] rule for the conduct of criminal prosecutions is to be applied retroactively *to all cases*, state or federal, pending on direct review or not yet final, *with no exception* for cases in which the new rule constitutes a 'clear break' with the past." (*Id*. at p. 328, italics added; *Davis v. United States* (2011) 564 U.S. 229, 243.)

We have located, and the parties have cited, no case adopting a rule of law requiring retroactivity when a noncriminal statute is declared unconstitutional. A secondary authority has addressed the issue by stating that "not every declaration of unconstitutionality is retroactive in effect." (See 13 Cal.Jur.3d (2020) Constitutional Law, § 85, p. 160, citing *Chicot County Drainage Dist. v. Baxter State Bank* (1940) 308 U.S. 371, 374.) This approach is illustrated by the retroactivity of the judicial decision declaring California's automobile guest statute unconstitutional. (*Brown v. Merlo* (1973) 8 Cal.3d 855.) In *Brown*, our Supreme Court determined the guest statute, Vehicle Code section 17158, "violates the equal protection guarantees of the California and United States Constitutions." (*Id*. at p. 882.) The next year, the Second District addressed the retroactivity of *Brown* and stated: "A statute which violates either Constitution is to that extent void and, '[i]n legal contemplation, a void act is as inoperative as though it had never been passed. ...' " (*Cummings v. Morez* (1974) 42 Cal.App.3d 66, 73.) However, the conclusion that an unconstitutional statute is void did not automatically result in retroactivity. Instead, the Second District proceeded to address the fairness of retroactivity. (*Id*. at pp. 73-74.) The court determined *Brown* should apply retroactively

44.

and rejected applying an exception because "no vested rights have attached to any of the parties to the action." (*Cummings*, *supra*, at p. 74; see *Newman*, *supra*, 48 Cal.3d at p. 989 [the most compelling example of reliance is when a party acquired a vested right or made a contract based on the former rule].)  The court effectively adopted the principle that a judicial decision declaring a statute unconstitutional should not be applied retroactively when doing so would itself result in an unconstitutional deprivation or impairment of protected rights or interests.[9]

Here, Vehicle Code section 14112, subdivision (b) did not create any vested rights or interests and did not provide the foundation for contractual obligations that are entitled to constitutional protection.  Therefore, the exception to retroactivity designed to protect vested rights and contractual obligations does not apply.

        2.     *Other Types of Reliance*

The DMV's primary ground for not applying *DUI Lawyers II*, *supra*, 77 Cal.App.5th 517, retroactively is that it changed a settled rule on which the parties relied.  The DMV argues the APS system had been in effect for many decades with no constitutional infirmity being detected by any court and, moreover, several decisions upheld that system.  (See *Poland v. Department of Motor Vehicles* (1995) 34 Cal.App.4th 1128, 1134–1135 (*Poland*); *Anderson v. Cozens* (1976) 60 Cal.App.3d 130, 140; *Finely v. Orr* (1968) 262 Cal.App.2d 656, 666.)  Thus, the DMV asserts it properly relied on this settled case law and Vehicle Code section 14112, subdivision (b) and, as a result, this Court should determine *DUI Lawyers II* is not retroactive here.

---

[9]    This approach is not unique.  It also applies when the law is changed by the Legislature instead of a judicial decision.  A newly enacted statute will not be applied retroactively to deprive a person of a vested right or impair a contractual obligation.  (See *In re Marriage of Buol* (1985) 39 Cal.3d 751, 759; *Davis Boat Manufacturing-Nordic Inc. v. Smith* (2023) 95 Cal.App.5th 660 [retroactive application of a statute may be unconstitutional if it impairs the obligation of a contract].)

There are several factors relevant to our analysis of the extent to which the parties relied on the constitutionality of the APS system. The first involves the scope and applicability of the decisions cited by the DMV. In *DUI Lawyers II*, the Second District addressed this factor by stating it had not located "a case directly addressing the issue presented, i.e., whether the APS hearing officers' dual roles of advocate and trier of fact violates drivers' due process rights." (*DUI Lawyers II*, *supra*, 77 Cal.App.5th at p. 530.) The court was aware of *Poland*, a case in which the driver asserted the procedures the DMV used at the hearing violated due process because, among other things, "[t]he hearing officer cannot fairly or properly adjudicate the case because he or she is an employee of the [DMV] and a proponent of the evidence" and the procedures used were fundamentally unfair. (*Poland*, *supra*, 34 Cal.App.4th at p. 1134.) The Second District interpreted acting as a proponent of the evidence to mean "collecting and developing the evidence," which it distinguished from "*advocating* on behalf of the DMV" as then required by the DMV's Driver Safety Manual. (*DUI Lawyers II*, *supra*, at p. 533, fn. 5, italics in the original.) The Second District also noted the lawyers association had conceded "the DMV may task the same person with both collecting and developing the evidence and rendering a final decision." (*Ibid*.) In addition, *DUI Lawyers II* is distinguishable from *Poland* and the earlier cases because those cases did not address the constitutionality of Vehicle Code section 14112, subdivision (b). That subdivision was added after *Poland* was decided in April 1995. (See Stats. 1995, ch. 938, § 91.) The foregoing considerations render the applicability of the cases cited by the DMV to the specific due process challenge decided in *DUI Lawyers II* debatable, which makes the DMV's reliance on those cases more tenuous than if those cases clearly established applicable precedent.

A second factor is that the cases referred to by the DMV were not issued by the California Supreme Court. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [California Supreme Court decisions are binding upon all the state courts

in California].) Supreme Court decisions warrant greater reliance and, thus, this factor weighs slightly against applying an exception to retroactivity.

A third factor relates to timing and who knew what and when. The lawyers association challenging the constitutionality of the APS system filed its complaint in August 2014. (*DUI Lawyers II*, *supra*, 77 Cal.App.5th at p. 526.) Thus, when the Drivers' APS hearings were held in January through April of 2019, the DMV had been litigating the due process issues for over four years. By 2019, the DMV was aware that the procedural defense (i.e., lack of standing) raised in its motion for summary judgment had been rejected by the Second District and that the merits of the lawyers association's due process claims were being addressed on remand. (*DUI Lawyers I*, *supra*, 20 Cal.App.5th at p. 1265.) As a result, when the DMV denied the Drivers' requests for continuances, it was aware of the possibility that one or more due process violations might be found in the lawsuit pending in Los Angeles. Consequently, the present case does not involve a situation where the DMV was caught unaware by litigation between third parties that produced an appellate decision changing a rule of law on which the DMV relied. In our view, the DMV's awareness undermines its reliance to a greater degree than the first two factors discussed above.

The fourth factor involves who exactly relied on the rule that was overturned. Our Supreme Court's decisions refer to " ' "the *parties'* reliance on the former rule." ' " (*Claxton v. Waters*, *supra*, 34 Cal.4th at p. 378, quoting *Woods v. Young*, *supra*, 53 Cal.3d at p. 330.) "Reliance" is defined as "[d]ependence or trust by a person, esp. when combined with action based on that dependence or trust." (Black's Law Dictionary (2023).) For example, a person relies on a misrepresentation or omission in situations where the person would have "behaved differently" if aware of the correct information. (*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1093; see *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1091 [plaintiff failed to adequately plead reliance because he did

47.

not identify the particular acts he took, or any acts he did not take, due to his trust of the alleged forgeries].)

Here, the Drivers cannot be said to have relied on the constitutionality of the APS system in the sense that they choose a particular course of action due to their trust in that system. Rather, the unconstitutional APS system was the only avenue for challenging their suspensions and, thus, it was imposed upon them.[10] Consequently, only the DMV depended upon or trusted the APS system to be constitutional in conducting the APS proceedings involving the Drivers. The DMV's unilateral reliance distinguishes this appeal from cases where both sides reasonably relied on a subsequently invalidated rule or statute. Mutual reliance exists, for example, in a case where both sides present their evidence to the trier of fact based on a particular rule of evidence, such as the rule allowing the admission of extrinsic evidence to prove a preprinted workers' compensation release was intended to release other causes of action. When the Supreme Court abolished that rule, it stated the new rule disallowing such evidence would apply only to release forms executed after its decision. (*Claxton v. Waters*, *supra*, 34 Cal.4th at p. 379.) The court rejected retroactivity because the former rule was "one that parties in this and other cases may have relied upon in settling claims." (*Ibid*.) Here, only the DMV relied on the APS system, which presents a much weaker case against retroactivity than situations where both parties, along with third parties in other cases, have relied on the former rule of law.

To summarize, the DMV's claim of reliance does not justify an exception to the usual rule that judicial decisions apply retroactively because (1) the reliance on the former rule was not mutual; (2) the DMV's unilateral reliance on the constitutionality of the APS system was not the basis for it acquiring a vested right or entering into a

---

**10** We reject the theory that the Drivers trusted or depended upon the APS system being constitutional when they did not raise a due process objection during the administrative proceedings. Such an objection would have been futile. (See *Knudsen*, *supra*, 101 Cal.App.5th at pp 196–197.)

contractual obligation; and (3) during the period of retroactivity, the DMV was actively litigating the due process challenges raised against the APS system. In addition, the decisions cited by the DMV did not unequivocally decide the specific due process violations found in *DUI Lawyers II* and were not issued by the California Supreme Court.

### 3. *Substantive Change Versus Procedural Change*

Although not raised by the DMV to justify a deviation from the usual rule of retroactivity, we will address the other considerations of fairness and public policy bearing on the retroactivity issue. Whether the change in law is substantive or procedural is one such consideration. Procedural changes are less likely to be applied retroactively. (See *In re Milton*, *supra*, 13 Cal.5th at p. 903 [federal and state criminal cases addressing retroactivity distinguish between substantive and procedural rules].) The new rule of law adopted in *DUI Lawyers II* is properly classified as procedural because the APS system addresses the manner of determining whether a driver's license suspension should be upheld or vacated. (See *In re Milton*, *supra*, at pp. 907–908.) Restated from another perspective, the unconstitutionality of the APS system does not alter the range of conduct or the class of persons subject to suspension. (*Ibid*.) However, unlike some procedural rules, the aspects of the APS system found unconstitutional involved the impartiality of the hearing officer, which affects the framework within which the hearing proceeds and the integrity of the fact-finding process. Therefore, we conclude the procedural nature of the rule change does not weigh heavily in favor of an exception to the usual rule that judicial decisions are retroactive.

### 4. *Effect on the Administration of Justice*

Another consideration of fairness and public policy relevant is "retroactivity's effect on the administration of justice." (*Woods v. Young*, *supra*, 53 Cal.3d at p. 330.) To analyze this impact, we examine how retroactivity would affect (1) the APS proceedings, (2) superior court cases, and (3) appellate cases. As the dividing line between retroactive

application of *DUI Lawyers II* and its prospective application, we use July 20, 2022, the date the Supreme Court stated the judgment was final.

Having identified the dividing line between retroactive and prospective application of *DUI Lawyers II*, the next question is how far back in time to extend retroactivity. The answer to that question, at least for this appeal, is embedded in the procedural posture of the Drivers' cases. None of the Drivers' cases have had a final judgment entered. Therefore, any decision we render about the retroactivity of *DUI Lawyers II* is necessarily limited to cases without a final judgment. (See *Ginns v. Savage* (1964) 61 Cal.2d 520, 524 [opinion is to be understood in the light of the facts and the issue then before the court and is not authority for a proposition not considered].) If this opinion were to state that retroactivity extends to cases with a final judgment, that statement would be dictum. (See 9 Witkin, Cal. Procedure (6th ed. 2021) Appeal, § 530, pp. 563–564 [*ratio decidendi* and *dicta*].) Phrased another way, the facts of this appeal do not present the issue of whether *DUI Lawyers II* should be *fully* retroactive in the sense of allowing collateral attacks on final judgments. Consequently, any retroactivity adopted here would be limited in scope to lawsuits without a final judgment, which reduces the potential impact on administrative proceedings completed under the unconstitutional APS system. (See *Calvert v. County of Yuba* (2006) 145 Cal.App.4th 613, 630 [limiting retroactivity of the decision to cases in which no final judgment had been rendered].)

First, none of the APS proceedings currently pending before a DMV hearing officer (i.e., those matters where the hearing officer has not rendered a final administrative decision) would be affected by retroactivity. All administrative matters pending after July 20, 2022, are, or would have been, subject to the permanent injunction entered by the Los Angeles Superior Court, as modified by the Second District. (See *DUI Lawyers II*, *supra*, 77 Cal.App.5th at p. 538 [disposition modifying the permanent injunction contained in the judgment].) Thus, retroactivity will not cause an administrative burden or inconvenience in currently pending APS proceedings.

50.

Second, the volume of superior court writ proceedings that would be affected by retroactivity is restricted by the 30-day statute of limitations for seeking judicial review of a hearing officer's suspension order. (Veh. Code, § 13559, subd. (a) [petition may be filed within 30 days of the issuance of the notice of determination].) For hearing officer decisions issued in the period of retroactivity (i.e., before July 20, 2022), that limitations period expired on or before August 19, 2022. Because that deadline is long past, retroactive application of *DUI Lawyers II* will not incentivize the timely filing of a writ petition that asserts retroactivity renders a suspension order invalid. Thus, retroactivity will not affect the administration of justice in the superior court by increasing the number of writ petitions filed.

Next, we consider the impact on writ proceedings currently pending in superior courts. We estimate that most of those proceedings were filed after August 19, 2022, and, thus, would not be affected by retroactivity. A writ proceeding filed before that date would have been pending in the superior court for 20 months and, in this court's experience, few superior court proceedings challenging the suspension of a driver's license take that much time. Using this appeal as an example, the first petition for writ of mandate was filed in February 2019, the superior court issued its final ruling in February 2020, and the judgment was filed on June 4, 2020. Thus, the consolidated matters, which would have taken more time than a case involving just one driver, were decided by the superior court within a year, with an additional four months for filing the judgment. In comparison, a recent case involving a single driver, *Ramirez v.* [*Department of Motor Vehicles*], *supra,* 88 Cal.App.5th 1313, the driver's writ petition was filed on October 18, 2019, and the judgment was filed by the superior court on October 19, 2020.[11]

---

[11]    In addition, the First District has decided two cases without providing the date the writ petition was filed or the date the judgment was filed, but the time between the APS hearing and the filing of the appellate opinion was two years and six months in one case and less than two years in the other. (See *Phillips v. Gordon* (2023) 97 Cal.App.5th 702, 709 [June 2021 APS hearing and November 2023 opinion]; *Delgado v. Department of*

Accordingly, we infer there are few writ proceedings still pending in superior courts that involve hearing officer decisions issued before July 20, 2022. Therefore, the administrative burden on the DMV resulting from superior courts retroactively applying *DUI Lawyers II* will be relatively slight when compared to the DMV's overall caseload. To provide context for the burden to the DMV of reversals based on applying retroactivity to pending writ proceedings, the DMV (1) took a net total of 117,535 APS actions in 2018 and (2) scheduled 44,213 APS hearings in 2018 for APS actions involving evidence of a BAC equal or more than .08 percent or, for drivers under the age of 21, a BAC of .01 percent or more.[12]

Third, we consider how retroactivity would affect the Court of Appeal's caseload. As for causing more appeals, retroactivity could only incentivize the filing of a notice of appeal in writ proceedings currently pending in the superior court that (1) involve a hearing officer's decision issued before July 20, 2022, and (2) the superior court's failure to apply *DUI Lawyers II* retroactively. As explained above, few cases will satisfy the first condition because most cases currently pending in the superior court will involve an administrative decision issued *after* July 20, 2022. Thus, retroactivity will create few, if any, new appeals. It also appears the impact on existing appeals will be slight. For instance, this is the Fifth District's only pending appeal from the denial of a writ of mandate challenging a DMV suspension order that occurred before *DUI Lawyers II* became final. Therefore, retroactivity will not impact any cases pending in this district. We note that neither side has asked us to take judicial notice of the number of appeals pending in the other districts of the Court of Appeal.

---

*Motor Vehicles* (2020) 50 Cal.App.5th 572, 576 [July 2018 APS hearing and May 2020 opinion].) These timeframes are consistent with a superior court proceeding that takes less than 18 months.

[12] For these two categories of cases, the percentage of APS actions set aside in 2018 after an APS hearing was held or completed was 8.7 and 9.4, respectively.

To summarize, because of the length of time it took for this appeal to become fully briefed, it appears the volume of pending APS hearings and court cases that will be affected by retroactivity will not result in such a large administrative burden for the courts or the DMV.  Thus, on balance, considerations of the administration of justice, which include whether it is just to subject Drivers to an unconstitutional APS system, do not weigh in favor of departing from the usual rule of retroactivity.

### 5. *Purpose of the New Rule*

Another factor affecting whether a judicial decision should be applied retroactively is "the purposes to be served by the new rule." (*Woods v. Young*, *supra*, 53 Cal.3d at p. 330.)  Here, the purpose of the new rule is to provide persons challenging the suspension of their driver's license with a hearing that complies with the procedural due process requirements of the federal and state constitutions.  "The touchstone of due process is fundamental fairness." (*People v. Lemcke* (2021) 11 Cal.5th 644, 655; see *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 790 [same].)  Because due process is based on fairness and retroactivity also is based on fairness, the issue in this case could be rephrased as whether it is fair to deny Drivers relief from an APS system determined to be fundamentally unfair.  In our view, *DUI Lawyers II*'s purpose of assuring the APS system is fair would be curtailed if it was applied only prospectively.

### 6. *Conclusion*

Based on our weighing of the various considerations of fairness and public policy, we conclude that *DUI Lawyers II* should be applied retroactively to cases where a final judgment has not been entered.

### D. Structural Error and Prejudice

The DMV contends that, absent exceptional circumstances, due process violations in administrative proceedings are subject to harmless error analysis and, therefore, Drivers must show prejudice to obtain a reversal based on the violations identified in *DUI*

*Lawyers II*. The DMV also contends Drivers must show actual bias, rather than the appearance of bias, to establish a fair hearing violation.

Drivers contend a harmless error analysis does not apply because the due process violations identified in *DUI Lawyers II* are structural defects. In addition, they argue that the actual prejudice requirement in article VI, section 13 of the California Constitution does not apply to violations of the federal due process clause. As explained below, we conclude structural due process violations occurred and, therefore, the Drivers need not demonstrate prejudice.

In *Knudsen*, we concluded that a driver's due process right to an impartial adjudicator is violated when the hearing officer acts as an advocate for the DMV. (*Knudsen*, *supra*, 101 Cal.App.5th at p. 193.) We also concluded "that the absence of a constitutionally impartial adjudicator, through either the presence of actual bias or a constitutionally intolerable probability of bias, at an APS hearing is a structural error." (*Id*. at p. 206.) As a result, the driver was not required to establish the due process violation resulted in prejudice. We follow *Knudsen* and its conclusions that due process is violated when a hearing officer acts as both an advocate and adjudicator and that such a violation is a structural error.

Next, we address an issue not reached in *Knudsen*—whether the other type of due process violation recognized in *DUI Lawyers II* is a structural error. That due process violation arises from "the DMV's structural design allowing for ex parte managerial interference with the hearing officers' decisionmaking." (*DUI Lawyers II*, *supra*, 77 Cal.App.5th at p. 535, fn. 6.) We conclude that managerial interference also deprives the driver of an impartial adjudicator. As a result, our conclusion in *Knudsen* that the absence of an impartial adjudicator is a structural error applies with equal force to the due process violation resulting from managerial interference with the hearing officer's decisionmaking. Consequently, the due process violation resulting from managerial interference with a hearing officer's decisions is properly classified as a structural error.

54.

(See *Knudsen*, *supra*, 101 Cal.App.5th at p. 206.) It follows that the Drivers are not required to show the due process violations resulted in prejudice.

E. <u>Existence of Due Process Violations</u>

In *Knudsen*, we concluded it is possible in a particular case for the hearing officer to collect and develop the evidence and then render a decision without having acted as an advocate for the DMV. (*Knudsen*, *supra*, 101 Cal.App.5th at p. 207.) Based on this possibility, hearing officer decisions issued before the permanent injunction in *DUI Lawyers II* became final need not be automatically reversed. Instead, "the DMV should be given the opportunity to show that a public hearing officer did not actually act as an advocate." (*Knudsen*, *supra*, at p. 207.) We concluded that where the DMV shows that the hearing officer did not act as an advocate, the DMV will have shown that due process was not violated on that particular ground. (*Ibid*.) Alternatively, we concluded that where "the DMV cannot adequately demonstrate that a hearing officer did not actually act as an advocate, then the due process violation identified in *DUI Lawyers* [*II*] will have occurred." (*Ibid*.)

We take the same approach to due process violations arising from managerial interference with the hearing officer's decisions. Where the DMV shows that managerial input did not affect the hearing officer's decision to deny a request to continue an APS hearing, the second type of due process violation identified in *DUI Lawyers II* and now prohibited by the permanent injunction will not have occurred.

Applying the foregoing legal principles to the facts of this case presents the question whether the DMV has demonstrated that, when deciding to deny the requested continuances and upholding the license suspension orders, the hearing officers (1) did not actually act as an advocate for the DMV and (2) were not influenced by ex parte communications from, or command control by, a manager. Here, we need not address whether the first type of due process violation occurred because the record shows that managerial directives as to what constituted good cause of a continuance affected the

55.

hearing officers' decisions on the requests for continuances. As a result, the DMV is unable to satisfy the requirement that it demonstrate the managerial-interference type of due process violation did not actually occur. The appropriate remedy for such a violation is a new APS hearing. (*Knudsen*, *supra*, 101 Cal.App.5th 213.)

Based on this conclusion about the existence of a due process violation, we do not reach the series of issues raised by the parties' conflicting interpretations of section 11524, subdivision (b) and its good cause requirement.

V.      THE FORMALITY OF A WRIT OF MANDATE MAY BE WAIVED

Having determined the Drivers should receive new APS hearings, we next consider whether to require the superior court to issue a writ of mandate directing the DMV to schedule and hold such hearings. The issuance of a writ is addressed by the text of Code of Civil Procedure section 1095, which states: "If judgment be given for the applicant [who sought a writ of mandate], … a peremptory mandate must also be awarded without delay." Ordinarily, the word "must" is perceived as mandatory, which would indicate the prompt award of "a peremptory mandate"—that is, a writ of mandate—is required. However, "rights conferred by statute may be waived unless specific statutory provisions prohibit waiver." (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1049, fn. 4; see Civil Code § 3513.) Because there is no statutory provision forbidding the waiver of the issuance of a writ of mandate, it is possible for the parties to jointly waive the right under Code of Civil Procedure section 1095 to have a writ issued. We conclude a joint waiver is necessary because the writ protects the interests of each side by specifying what the agency is commanded to do. The parties' waiver may be expressed in words, either oral or written, or implied by their conduct. (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31.)

California practice guides addressing mandamus state that when a superior court grants a petition for writ of mandamus, the court usually instructs the petitioner's counsel to prepare the peremptory writ of mandamus. (2 Cal. Administrative Mandamus

(Cont.Ed.Bar 3d ed. 2023) § 15.1, p. 15-2 [documents required if writ is granted]; 1 Cal. Civil Writ Practice (Cont.Ed.Bar 4th ed. 2023) §§ 9.41–9.44, p. 9-17 [petitioner's preparation of peremptory writ].)  In comparison, a practice guide addressing a writ proceeding challenging the DMV's suspension of a license states the court usually issues a written ruling and the prevailing party is required to prepare the judgment.  (Johnson & Taylor, California Driving Under the Influence Defense, *supra*, § 4:20.)  The practice guide includes examples of both documents in its appendix.  (*Id*., Appendix §§ 4.16, 4.17)  It does not (1) refer to the preparation and issuance of a writ of mandate, (2) provide an example of a writ, or (3) mention the mandatory language in Code of Civil Procedure section 1095.  These omissions suggest that (1) the DMV and prevailing drivers routinely waive the statutory right to issuance of a writ and (2) cases where the judgment directs the DMV to conduct a new APS hearing rarely result in disputes that could have been avoided by the additional effort of having a formal writ issued. Accordingly, we will allow the parties in this appeal the flexibility of waiving or requesting the issuance of a writ of mandate and will not direct the superior court to issue such a writ.[13]

We took the same approach in *Ramirez v. [Department of Motor Vehicles,] supra*, 88 Cal.App.5th 1313, a case involving only administrative mandamus instead of both ordinary and administrative mandamus.  (See Code Civ. Proc., §§ 1085 [ordinary mandamus], 1094.5 [administrative mandamus].)  There, we modified the judgment to

---

[13]    In *LandValue 77, LLC v. Board of Trustees of California State University* (2011) 193 Cal.App.4th 675, we concluded the superior court erred by failing to issue a peremptory writ of mandate in a case brought under the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.).  In that case, the issuance of the writ was made mandatory by Public Resources Code section 21168.9, subdivision (b) and we rejected the respondent's argument "that the judgment effectively operates as a writ of mandate."  (*LandValue 77*, at pp. 680–681.)  In *LandValue 77*, the petitioner requested a writ.  Therefore, that decision did not address the possibility of the parties waiving their right to have a writ issued and should not be interpreted to mean such a waiver is prohibited by law.

provide that the matter be "remanded to the DMV for further proceedings not inconsistent with this opinion" (*id*. at pp. 1336–1337) and did not include specific directions for the issuance of a writ. Use of the word "remanded" corresponded to the phrase "remanding the case" contained in Code of Civil Procedure section 1094.5, subdivision (e). "Remanded" lacks specificity and allowed the parties, if they chose, to proceed without the formal issuance of a writ of mandate.

Another question about the content of our judgment is whether to include instructions for how the DMV should conduct the new APS hearings to avoid the due process violations found in *DUI Lawyers II*, *supra*, 77 Cal.App.5th 517. Instructions of that nature are not needed because the DMV is subject to the permanent injunction issued in that litigation. Since July 20, 2022, the modified permanent injunction has "been final and operative." (*Knudsen*, *supra*, 101 Cal.App.5th at p. 199, fn. 3].) Thus, it restrains the DMV " 'from having its APS hearing officers function as advocates for the position of the DMV in addition to being finders of fact in the same adversarial proceeding' " (*DUI Lawyers II, supra,* at p. 538) and from "allowing for ex parte managerial interference with the hearing officers' decisionmaking" (*id*. at p. 535, fn. 6). If the DMV complies with the permanent injunction, those specific types of due process violations will not occur. Alternatively, the DMV might fail to comply with the permanent injunction. We cannot assume such a failure will occur and, therefore, do not reach the questions about what the judicial remedies are available to aggrieved drivers. (See Code Civ. Proc., § 525 [injunction "may be enforced as an order of the court"]; *Donovan v. Superior Court* (1952) 39 Cal.2d 848, 850 ["contempt proceedings arose out of alleged violations of a permanent injunction"].)

## VI. THE AWARD OF COSTS TO THE PREVAILING PARTY IN MOOT CASES

### A. Procedural Background

#### 1. Joseph Klein

On February 19, 2019, the DMV hearing officer issued a notification of findings and decision stating (1) appellant Joseph Klein's requests to continue the February 15, 2019 APS hearing were denied; (2) neither Klein nor a representative appeared at the APS hearing, and (3) the DMV's evidence demonstrated (a) the peace officer had reasonable cause to believe Klein was driving under the influence, (b) Klein was placed under lawful arrest, and (c) Klein was driving with a BAC of .08 percent or more. The decision stated the suspension of Klein's driving privilege would be reimposed effective February 28, 2019, and would remain in effect through February 27, 2020.

On February 28, 2019, Klein filed a petition for writ of mandate. Klein's petition requested that the DMV be directed to issue Klein's driver's license and, pending the hearing and order on the petition, stay the operation of the order suspending his license. His petition also requested such further relief as the court deemed just and proper and an award of attorney fees and costs under relevant law.

On March 13, 2019, the superior court filed an order staying the suspension of Klein's driving privilege, subject to the condition that he not operate a motor vehicle with any measurable amount of alcohol or other intoxicant in his blood. About 10 weeks later, on May 21, 2019, the DMV issued an order setting aside the suspension of Klein's license. The order stated the DMV had received certified court orders showing Klein had been acquitted in the criminal proceedings and cited the statute requiring the DMV to immediately reinstate a person's administratively suspended driving privilege if the person is acquitted of criminal charges. (Veh. Code, § 13353.2, subd. (e).)

The superior court's February 2020 ruling on the consolidated cases addressed Klein's petition by stating: "Petition DENIED. The issue raised by the petition is moot. The respondent DMV's order of suspension was vacated and set aside. The parties will

bear their own costs. Attorneys' fees are <u>DENIED</u>." The June 2020 judgment implemented these terms.

### 2.    *Jamie Perea*

On April 12, 2019, the DMV hearing officer issued a notification of findings and decision stating (1) the request for a continuance of the APS hearing was denied because good cause was not established, (2) neither Perea nor a representative appeared at the APS hearing, and (3) the three criteria for upholding the suspension order had been proven by the DMV's evidence, and (4) the suspension order was reimposed.

On April 18, 2019, appellant Jamie Perea filed a petition for writ of mandate. Perea's petition requested that the DMV be directed to issue Perea's driver's license and, pending the hearing and decision on the petition, to stay the DMV's order suspending his license. The petition also requested such further relief as the court deemed just and proper and an award of attorney fees and costs pursuant to section 800 and all other relevant law.

On May 1, 2019, the superior court filed an order granting a stay of the enforcement of the administrative order suspending Perea's driving privilege. The stay was conditioned upon Perea (1) not operating a motor vehicle with any measurable amount of alcohol or other intoxicant in his blood; (2) submitting to a blood or breath test at the request of any peace officer; (3) driving only to, from and during work; and (4) maintaining a copy of the order in his possession at all times while operating a motor vehicle.

On August 27, 2019, about 17 weeks after the superior court's stay order, the DMV set aside the suspension of Perea's license. The set-aside order stated the DMV had received certified court orders showing Perea had been acquitted in the criminal proceedings and referenced Vehicle Code section 13353.2, subdivision (e).

The superior court's February 2020 ruling on the consolidated cases addressed Perea's petition by stating: "Petition <u>DENIED</u>. The issue raised by the petition is <u>moot</u>.

The respondent DMV's order of suspension was vacated and set aside. The parties will bear their own costs [o]f suit." Consistent with the superior court's ruling, the June 2020 judgment stated the parties in the writ proceeding filed by Perea were to bear their own costs.

### B. Issue Raised on Appeal

Klein and Perea contend the superior court erred when it determined that they should bear their own costs. They claim to be the "prevailing party" because they achieved their litigation objectives even though they recovered no monetary relief and their writ petitions were denied as moot.[14]

The DMV contends Klein and Perea did not prevail in their writ proceedings. In particular, the DMV asserts Klein and Perea "incorrectly contend that they achieved their objectives in this litigation and thus are the prevailing parties entitled to costs." The DMV argues that Vehicle Code section 13353.2, subdivision (e) required the APS suspension of their licenses be set aside after the criminal acquittals and, therefore, their writ petitions and the legal theories raised in the superior court had no causal relationship to the DMV setting aside the suspensions.

### C. Prevailing Party Status

Klein and Perea base their claim to costs on the definition of prevailing party in Code of Civil Procedure section 1032, subdivision (a)(4) and various case law, including *Lewin v. Board of Trustees* (1976) 62 Cal.App.3d 977 (*Lewin*). The cost provisions referred to in *Lewin* were Code of Civil Procedure sections 1094.5, subdivision (a) and 1095. Code of Civil Procedure section 1094.5, subdivision (a), provides in part: "If the expense of preparing all or any part of the record has been borne by the *prevailing party*, the expense shall be taxable as costs." (Italics added.) Code of Civil Procedure section

---

[14] Klein and Perea do not contend the superior court adopted the wrong type of relief for a moot case when it *denied* their petitions and entered judgment in favor of the DMV instead of *dismissing* their petitions. Their failure to raise this technical issue about a denial or dismissal has no impact on our analysis of their claim to prevailing party status.

1095 does not use the term "prevailing party" and addresses the subject of costs by stating: "If judgment be given for the applicant, the applicant may recover the damages which the applicant has sustained, … as may be determined by the court … together with costs."

### 1.     *Code of Civil Procedure section 1032*

The second sentence or prong of Code of Civil Procedure section 1032, subdivision (a)(4) states:

> "If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed, may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034."

Under this prong, " 'the trial court in its discretion determines the prevailing party, comparing the relief sought with that obtained, along with the parties' litigation objectives as disclosed by their pleadings, briefs, and other such sources.' " (*Friends of Spring Street v. Nevada City* (2019) 33 Cal.App.5th 1092, 1104 (*Friends*).)  Thus, the relevant inquiry is "whether the party succeeded at a practical level by realizing its litigation objectives [citation] and the action yielded the primary relief sought in the case." (*Ibid.*)

The first step of our analysis addresses the relief sought by Klein and Perea when they filed their petitions for writ of mandate.  The petitions requested a writ directing the DMV to issue their driver's licenses and, pending the hearing and decision on the petitions, to stay its order suspending their licenses.  Thus, they sought interim relief pending a final decision (a stay) and a writ of mandate.

The second step of our analysis identifies the relief actually obtained through the court.  Both Klein and Perea obtained interim relief in the form of a stay of the enforcement of the administrative order suspending their driving privileges.  No further relief was obtained *in their writ proceedings* because the DMV, as required by Vehicle

Code section 13353.2, subdivision (e), issued orders setting aside the suspension of their licenses after receiving court orders showing Klein and Perea had been acquitted in their criminal proceedings.

The third step addresses both parties' litigation objectives, which involves a review of their pleadings, briefs and other sources. The sample answer of the DMV contained in the joint appendix shows the DMV requested a denial of the writ of mandate, entry of judgment in its favor, the dissolution of the superior court's stay, and the reimposition of the license suspension. In short, the DMV objectives were to uphold the license suspensions imposed under the APS system. The objectives of Klein and Perea were the opposite.

At a practical level, Klein and Perea wanted to avoid losing their driving privileges. If Klein had not filed his petition and obtained a stay, his license would have been suspended for over two months before the DMV issued the May 2019 set aside order. Similarly, if Perea had not filed his petition and obtained a stay, his license would have been suspended for about 17 weeks before the DMV issued the August 2019 set aside order. Thus, as a result of pursuing litigation, Klein and Perea realized an objective they would not have obtained without filing suit.

Because the test for prevailing party status under the second prong of Code of Civil Procedure section 1032, subdivision (a)(4) focuses on success at a practical level in relation to the parties' litigation objectives and because other statutes with prevailing party provisions adopt the same or similar test, we consider cases in which a plaintiff obtained interim relief and, subsequently, the lawsuit was dismissed as moot.

In *Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583 (*Champir*), the trial court determined that, for purposes of an award of attorney fees under Civil Code section 5975, subdivision (c), the plaintiff homeowners were the prevailing party in a lawsuit against their homeowners' association. (*Champir*, at p. 586.) The plaintiffs filed the action to enforce their planned development community's recorded covenants,

63.

conditions, and restrictions (CC&Rs) governing the installation of a traffic signal. (*Id.* at p. 587.) They obtained a temporary restraining order and subsequent preliminary injunction enjoining the construction of the traffic signal. (*Id*. at p. 588.) After issuance of the preliminary injunction, the homeowners' association obtained the consent of a majority of its members to the installation and related expenditure of funds. (*Id*. at p. 589.) Consequently, the trial court dissolved the preliminary injunction and the plaintiffs voluntarily dismissed the action. (*Ibid*.) Each side then filed motions for attorney fees claiming to be the prevailing party. (*Ibid*.) The trial court awarded fees to the plaintiffs, and the homeowners' association appealed. (*Ibid*.)

The "prevailing party" determination under Civil Code section 5975 focuses on who succeeded on a practical level by achieving their main litigation objectives. (See *Champir*, *supra*, 66 Cal.App.5th at p. 590.) The trial court applied this test and determined the plaintiffs' main objective was to require the homeowners' association to comply with the CC&Rs, which was achieved by obtaining the preliminary injunction that compelled the association to obtain the written consent of a majority of its members before installing the traffic signal. (*Ibid*.) The appellate court upheld this determination and rejected the argument that the association prevailed as a matter of law because it ultimately installed the traffic signal and incurred no monetary liability. (*Id*. at pp. 592–593.)

In *Zuehlsdorf v. Simi Valley Unified School Dist.* (2007) 148 Cal.App.4th 249 (*Zuehlsdorf*), the parents of a high school student filed a petition for a writ of mandate and sought injunctive relief against their daughter's high school, school district, and an athletic league to enjoin them from preventing her from playing varsity soccer. (*Id.* at p. 252.) The trial court granted a temporary restraining order and a preliminary injunction, enjoining the defendants from obstructing or interfering with the daughter's participation in the varsity soccer program. (*Id*. at p. 254.) Due to this interim relief, the daughter was reinstated in the athletic program. (*Id*. at p 251.) Subsequently, the trial court denied as

moot the application for the permanent injunction and awarded attorney fees and costs under section 800. (*Zuehlsdorf, supra,* at p. 254.)

The defendants in *Zuehlsdorf* appealed, contending the award was improper because the plaintiffs were not the prevailing parties. (*Zuehlsdorf, supra*, 148 Cal.App.4th at p. 256.) The appellate court referred to the parties' litigation objectives and determined the parents were "successful in [their] attempt to have [the daughter] reinstated in the athletic program while appellants failed in their efforts to prevent her participation." (*Ibid.*) Thus, the appellate court upheld the trial court's determination that the parents were the prevailing party under section 800. (*Zuehlsdorf, supra,* at p. 258.)

Courts deciding whether a plaintiff was successful for purposes of obtaining attorney fees under Code of Civil Procedure section 1021.5 must perform a pragmatic assessment. (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685.) "The critical fact is the impact of the action, not the manner of its resolution." (*Ibid.*) Thus, "plaintiffs who obtain some of the benefit sought in their lawsuit may be considered the prevailing party even if the defendant ultimately obtains a dismissal." (1 Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2023) § 2.108, p. 2-133.) "The same principle applies to plaintiffs whose lawsuits are dismissed as moot because relief is obtained." (*Id*. at p. 2-134.)

Here, we conclude as a matter of law that Klein and Perea were the prevailing party in their lawsuits because they achieved their litigation objectives and retained their licenses. Thus, Klein and Perea, like the plaintiff in *Friends*, are entitled to further proceedings to determine the amount of the other costs recoverable in accordance with Code of Civil Procedure "section 1032 and the applicable legal principles." (*Friends, supra*, 33 Cal.App.5th at pp. 1106, 1111.)

2.      *Cost Provisions Specific to Mandamus Proceedings*

To the extent Klein and Perea are able to show they pursued a writ of administrative mandamus, they also may be prevailing parties entitled under Code of

Civil Procedure section 1094.5, subdivision (a). The last sentence of that subdivision states: "If the expense of preparing all or any part of the record has been borne by the prevailing party, the expense shall be taxable as costs." (Code Civ. Proc., § 1094.5, subd. (a).) "Shall" is ordinarily interpreted as mandatory. Accordingly, they may be entitled as a matter of right to an award of the expense of preparing the administrative record borne by them.

In addition, Code of Civil Procedure section 1095 refers to the recovery of costs "[i]f judgment be given for the applicant." This provision applies to both ordinary and administrative mandamus. (See Code Civ. Proc., §§ 1085, 1094.5.) Here, judgment was entered against, rather than for, Klein and Perea and, thus, they fall outside the literal terms of the statute. However, the appellate briefing of Klein and Perea discusses *Lewin* and thus implies they are entitled to costs under Code of Civil Procedure section 1095 and the estoppel theory adopted in *Lewin*. Accordingly, we consider whether the DMV is estopped from arguing Klein and Perea cannot recover costs under Code of Civil Procedure section 1095 because they did not obtain a judgment in their favor.

In *Lewin*, probationary teachers filed an administrative mandamus proceeding against the board of trustees of a school district that had terminated their employment. (*Lewin*, *supra*, 62 Cal.App.3d at p. 979.) While the mandamus proceeding was pending, the parties stipulated that the petition had become moot as to the teachers (except two) who had been reemployed, refused reemployment, or accepted other employment. (*Id*. at p. 981.) Despite the dismissal for mootness, the trial court awarded costs to the teachers. (*Id*. at p. 982.)

The appellate court affirmed the award of costs, stating a number of teachers would have been entitled to relief and would have had judgment but for the school district's rehiring them, which rendered their petition moot. (*Lewin*, *supra*, 62 Cal.App.3d at p. 983.) The court concluded the school district "is thus estopped to complain of the award of costs." (*Ibid*.) To explain its estoppel theory, the court

66.

acknowledged the lack of California authority on point and recognized "the general proposition that where the litigant who prevails on the law is denied affirmative relief only because belated conduct of the opposing litigant renders moot the need for judicial relief, the prevailing litigant is entitled to its costs. [Citations.] Respondent cannot escape statutory liability for costs merely by granting the relief prayed for by the petition before the court has the opportunity to rule on the petition." (*Id*. at pp. 983–984.) Consequently, even though the teachers fell outside a literal reading of Code of Civil Procedure section 1095, the appellate court affirmed the award of costs.

The DMV argues that its orders setting aside the suspension of the licenses of Klein and Perea do not involve "belated conduct by the opposing litigant" as that phrase was used in *Lewin*. We note that the existence of estoppel generally is a question of fact. (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305.) Because the issue of costs is being remanded to the superior court on other grounds and the estoppel theory might not be reached in those proceedings, we conclude that theory as the basis for an award of cost against the government should be addressed, if necessary, by the superior court in the first instance.

## VII.  OTHER MATTERS[*]

Drivers' notice of appeal listed 51 appellants and case numbers. The purpose of this part of the opinion is to describe the outcome for the Drivers not covered by parts IV. through VI. of the opinion.

### A.  Dismissal of Two Appellants

The appeal of Charles Cowell, case No. BCV-19-101128, from the denial of his petition for writ of mandate was dismissed in June 2021 at his request.

The appeal of Armando Almanza, case No. BCV-19-100879, as conceded by Drivers' opening brief, "is moot as his suspension was set-aside." This concession was

---

[*]     See footnote, *ante,* page 1.

67.

repeated in Drivers' supplemental letter brief submitted after oral argument. Accordingly, we will apply the usual rule that when a case becomes moot, the appellate " 'court will not proceed to a formal judgment, but will dismiss the appeal.' " (*Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134; see *Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2011) 198 Cal.App.4th 939, 943 ["the usual disposition of a moot appeal is dismissal"].) We note that the dismissal of Almanza's appeal is, in effect, an affirmance of the judgment rendered against him. (See *Paul*, at p. 134; *In re Jasmon O.* (1994) 8 Cal.4th 398, 413.)

### B. Erroneously Filed Petitions

Drivers' opening brief states that the petition for writ of mandate of Doyoung Kim, case No. BCV-19-101080, was filed in error and concedes the denial of her petition "was correct on that basis." Drivers' opening brief also states that the petition for writ of mandate of Dustin Blanche, case No. BCV-19-101140, was erroneously filed and "concedes the trial court correctly denied his [petition] as moot" because the DMV set aside the suspension order at the APS hearing. These concessions were confirmed in Drivers' supplemental letter brief.

Accordingly, we will affirm the parts of the judgment (1) in favor of the DMV and against Kim and (2) in favor of the DMV and against Blanche.

### C. Diaz

The superior court's February 2020 ruling on the consolidated cases addressed Diaz's petition by stating: "Petition <u>DENIED</u>. The parties will bear their own costs. The DMV states in [its] brief that the APS hearing did not go forward, and [Diaz] states in his brief that [he] never received a decision. As it currently stands, the DMV apparently granted a continuance and has not attempted to reschedule the APS hearing. The issue raised by the petition is moot." On July 30, 2020, the DMV mailed Diaz an order of suspension stating:

68.

"The suspension of your driving privilege which became effective May 22, 2018, was stayed by order of the Bakersfield Driver Safety Office Court. [¶] The stay is now ended by order of the court. You are hereby notified the suspension of your driving privilege will be re-imposed effective August 04, 2020 and will continue in effect through August 03, 2021."

Diaz has demonstrated that the denial of his petition on the ground his case was moot was incorrect because (1) he was not given an APS hearing and (2) in August 2020, the DMV issued an order of suspension of his driving privilege stating the suspension would be reimposed and continue in effect through August 3, 2021. Based on this showing and the determinations set forth in part IV. of this opinion, we will reverse the part of the judgment in favor of the DMV and against Diaz. Diaz's writ petition should be granted on remand with directions that he receive a new APS hearing.

The documents included in Drivers' April 2024 request for judicial notice do not show that Diaz was acquitted in criminal court or that the DMV has vacated the order of suspension. Based on the record before us, we cannot accept the statement in the DMV's supplemental letter brief that Diaz's writ petition is moot.

### D.     Effect of Dispositions in Drivers' Criminal Cases

After oral argument, this court issued an order directing the parties to submit supplemental letter briefs addressing whether the resolution of the criminal matters pending against the Drivers rendered the appeal moot as to some or all of the Drivers. Drivers argued the appeal was not moot because a dismissal would leave the judgment in place and Drivers would not be relieved of paying the costs awarded to the DMV. Drivers also argued a reversal would allow them to seek costs as the prevailing party and to pursue a motion for attorney fees. The DMV agreed that a vast majority of the Drivers' cases were not rendered moot by the completion of the criminal matters. The points about costs and attorney fees, along with other, more detailed analyses presented in the supplemental letter briefs convince us that the appeal is not moot, except as to Almanza. Therefore, only his appeal will be dismissed as moot.

69.

E.    Stay Order

In August 2020, 19 Drivers filed a petition for writ of supersedeas or other appropriate stay order. On August 27, 2020, this court issued an order staying (1) the DMV's orders reimposing the suspension of the driving privileges of O'Neil, Owen, Howard, Gonzalez, Datiz and Lopez Vega and (2) any DMV orders resuspending the driving privileges of 13 other Drivers. For Drivers whose administrative cases are being returned to the DMV for further proceedings, the stay shall remain in place until 10 days after those proceedings are completed. For the other Drivers, the stay shall terminate upon the issuance of remittitur in this case. Because the stay was granted, any remaining requests in the petition for writ of supersedeas are denied.

## DISPOSITION

The appeal of Armando Almanza, case No. BCV-19-100879, is dismissed as moot. With respect to the other appellant Drivers, the judgment is affirmed in part and reversed in part, as specified below.

The judgment as to Doyoung Kim, case No. BCV-19-101080, is affirmed.

The judgment as to Dustin Blanche, case No. BCV-19-101140, is affirmed.

The judgment as to Joseph Klein, case No. BCV-19-100572, and Jamie Perea, case No. BCV-19-101077, is reversed to the extent it states the parties are to bear their own costs and, on remand, the superior court shall conduct further proceedings on the issue of costs that are not inconsistent with this opinion. The remainder of the judgment as to Klein and Perea is affirmed. Klein and Perea shall recover their costs on appeal.

The judgment as to the remaining 45 appellant Drivers[15] is reversed. On remand, except in cases where the DMV has set aside the suspension order based on the results of

---

[15]    *Cisneros v. Department of Motor Vehicles* (No. BCV-19-100294); *Granados v. Department of Motor Vehicles* (No. BCV-19-100295); *Reese v. Department of Motor Vehicles* (No. BCV-19-100296); *Alejandra v. Department of Motor Vehicles* (No. BCV-19-100297); *Frias v. Department of Motor Vehicles* (No. BCV-19-100298); *Orrin v. Department of Motor Vehicles* (No. BCV-19-100556); *Chavez v. Department of Motor Vehicles* (No. BCV-19-100557); *O'Neil v. Department of Motor Vehicles* (No. BCV-19-100558); *Berry v. Department of Motor Vehicles*

a criminal case, the superior court shall enter a judgment in favor of the Drivers, direct the DMV to set aside the findings and decision rendered in each of their cases, and direct the DMV to reconsider the cases in light of this court's opinion, which reconsideration shall include scheduling and conducting an APS hearing that addresses the merits of each Driver's challenge to the DMV's order of suspension or revocation. The August 27, 2020 stay order shall remain in effect as to these Drivers until 10 days after the DMV completes the Driver's administrative proceeding.

As to the Drivers for whom the DMV has set aside the order suspending their license due to the results of a criminal case, the superior court shall dismiss their writ petitions as moot and address whether those Drivers are prevailing parties for purposes of awarding costs.

(No. BCV-19-100563); *Cosper v. Department of Motor Vehicles* (No. BCV-19-100566); *Jimenez v. Department of Motor Vehicles* (No. BCV-19-100776); *Owen v. Department of Motor Vehicles* (No. BCV-19-100777); *Butler v. Department of Motor Vehicles* (No. BCV-19-100778); *Howard v. Department of Motor Vehicles* (No. BCV-19-100780); *Singh v. Department of Motor Vehicles* (No. BCV-19-100805); *Russell v. Department of Motor Vehicles* (No. BCV-19-100807); *Lynam v. Department of Motor Vehicles* (No. BCV-19-100808); *Blackhurst v. Department of Motor Vehicles* (No. BCV-19-100810); *Aguilar v. Department of Motor Vehicles* (No. BCV-19-100835); *Hawkins v. Department of Motor Vehicles* (No. BCV-19-100836); *Bennett v. Department of Motor Vehicles* (No. BCV-19-100837); *Ogden v. Department of Motor Vehicles* (No. BCV-19-100838); *Segovia-Rivera v. Department of Motor Vehicles* (No. BCV-19-100839); *Campbell v. Department of Motor Vehicles* (No. BCV-19-100840); *R. Gonzalez-Ozuna v. Department of Motor Vehicles* (No. BCV-19-100841); *Davis v. Department of Motor Vehicles* (No. BCV-19-100843); *Becarra v. Department of Motor Vehicles* (No. BCV-19-100878); *Graf v. Department of Motor Vehicles* (No. BCV-19-100880); *J. Perales v. Department of Motor Vehicles* (No. BCV-19-100881); *Del Sesto v. Department of Motor Vehicles* (No. BCV-19-100885); *Montero v. Department of Motor Vehicles* (No. BCV-19-100886); *Sanders v. Department of Motor Vehicles* (No. BCV-19-100887); *Martinez v. Department of Motor Vehicles* (No. BCV-19-100907); *Miller v. Department of Motor Vehicles* (No. BCV-19-100908); *White v. Department of Motor Vehicles* (No. BCV-19-100909); *Hunt v. Department of Motor Vehicles* (No. BCV-19-100910); *Herrera v. Department of Motor Vehicles* (No. BCV-19-100913); *Carter v. Department of Motor Vehicles* (No. BCV-19-101078); *Diaz v. Department of Motor Vehicles* (No. BCV-19-101079); *Romero v. Department of Motor Vehicles* (No. BCV-19-101081); *Datiz v. Department of Motor Vehicles* (No. BCV-19-101126); *M. Rodriguez v. Department of Motor Vehicles* (No. BCV-19-101127); *D. Gonzalez v. Department of Motor Vehicles* (No. BCV-19-101134); *Mody v. Department of Motor Vehicles* (No. BCV-19-101135); *Lopez Vega v. Department of Motor Vehicles* (No. BCV-19-101141).

The 45 appellant Drivers who obtained a reversal shall recover their costs on appeal.

FRANSON, J.

I CONCUR:


DE SANTOS, J.

POOCHIGIAN, Acting P. J., Concurring.

I concur in much of the majority opinion, including the ultimate disposition of this appeal. There is one aspect with which I cannot concur. The majority concludes that appellants are entitled to relief because the DMV failed to show its managers did not engage in ex parte command and control actions, which is a due process violation. I respectfully disagree with this conclusion because I do not think this issue is sufficiently implicated by the briefing or that the due process error is sufficiently clear. In my view, this case should be resolved through an analysis of Government Code section 11524, subdivision (b) (hereinafter section 11524(b)), which governs continuances of administrative per se (APS) hearings. Because the APS hearing officers assessed the requested continuances with standards and considerations that were contrary to section 11524(b), I believe the drivers are entitled to the relief the majority grants them.

### *Due Process Violation Based on Ex Parte Communications or Actions*

The majority relies on *California DUI Lawyers Assn. v. Department of Motor Vehicles* (2022) 77 Cal.App.5th 517 (*DUI Lawyers*) and *Knudsen v. Department of Motor Vehicles* (2024) 101 Cal.App.5th 186 (*Knudsen*) to conclude that the drivers' due process rights were violated and that such a violation constitutes a structural error. As indicated above, I believe that state of the briefing and the uncertainty of a constitutional error counsel against this reliance.

### Appellants' Briefing

Appellants' opening brief relies on *DUI Lawyers*'s conclusion that an APS hearing officer acting in the dual capacity of advocate for the DMV and adjudicator is unconstitutional. While the appellants' opening brief mentioned claims regarding ex parte communications and review from DMV managers to APS hearing officers, the brief presumably does so to provide background. The closest appellants come to making an argument based on ex parte communications and review appears to be part of one sentence. After quoting the dispositional order section of *DUI Lawyers*, appellants state:

"In the present matter, Appellants' APS hearing took place under the same system [*DUI Lawyers*] held violates due process; including, several instances where [DMV manager] Windover, directly inserted himself into the hearing process."  There is no citation to any facts in the record, an explanation of how Windover inserted himself into the "hearing process," or how or why the insertion represented an ex parte communication.  (Cf. *Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 857 [holding that an appellate claim was forfeited since it was "not supported by meaningful argument with citations to the record and authority"].)  In turn, DMV's responding brief does not mention the practice of ex parte communications and review.  Rather, DMV's responding brief is limited to addressing *DUI Lawyers* and due process with respect to an APS hearing officer's dual role as advocate and adjudicator.  Therefore, because the DMV's ex parte communications and review practice was not sufficiently raised by appellants or addressed by the DMV, I think that it is improper to decide this case based on the DMV's failure to show that no ex parte communications or review occurred.

As the majority correctly states, it is true that our court in *Knudsen* required the DMV to demonstrate the APS hearing officer did not actually act as an advocate during the APS hearing.  (*Knudsen*, *supra*, 101 Cal.App.5th at p. 207.)  However, DMV policy mandated the APS hearing officer to act as both an advocate for DMV and an adjudicator. (*Id.* at p. 206; *DUI Lawyers*, *supra*, 77 Cal.App.5th at pp. 523, 526.)  In contrast, *DUI Lawyers* indicated that DMV managers were *authorized* to engage in ex parte communications and review, not that they were *mandated* to do so.  (*DUI Lawyers*, at p. 523.)  That is, DMV managers appear to only have the ability to engage in these ex parte practices and were not expected to utilize them for each APS hearing.  Further, while *Knudsen* held that the record demonstrated the APS hearing officer unconstitutionally acted as an advocate, the DMV had expressly argued due process was followed and that the APS hearing officer merely gathered evidence.  (*Knudsen*, at pp. 207–208.)  That is, the DMV was aware of the issue and made apt arguments to

2.

uphold the APS hearing at issue.  (*Ibid.*)  In contrast, the issue of ex parte communications and review was not meaningfully part of the drivers' brief and was not addressed by the DMV in their responding brief.

Unclear Constitutional Violations

As indicated above, *DUI Lawyers* identified two DMV practices that implicated appellants' constitutional due process rights.  One practice was that the DMV had "authorize[d] its managers to change hearing officers' decisions or order the hearing officers to change their decisions, without notice to the driver."  (*DUI Lawyers*, *supra*, 77 Cal.App.5th at p. 523.)  The lower court found a practice of ex parte communications by DMV managers violated drivers' state due process rights.  (*Id*. at pp. 527–528.)  This ruling was not appealed and thus, was not extensively analyzed.  (*Id.* at p. 535, fn. 6.)  However, *DUI Lawyers* did explain that the plaintiff had alleged " ' "the APS system unconstitutionally allows DMV managers, executives, and/or administrators ex parte communications with the Hearing Officers and direct control over the decision-making process." ' "  (*Id*. at p. 526.)  More specifically, an APS hearing officer's " ' "initial … decision to set aside a suspension is subject to ex parte review, criticism, and unliteral reversal" by DMV management, "prior to it being issued to the licensee, without notice [to] or input from the licensee." ' "  (*Ibid*.)  The lower court "permanently enjoined DMV from 'maintaining or implementing a structure for [APS] hearings on the suspension or revocation of a driver's license that allows *ex parte* communications or command control by DMV Driver Safety Branch managers over Driver Safety Hearing Officers' decisions, including set asides or suspensions, before decisions are issued.' "  (*Id*. at p. 528.)  *DUI Lawyers* did note that "allowing for ex parte managerial interference with hearing officers' decisionmaking" also violated the federal Fourteenth Amendment.  (*Id.* at p. 535, fn. 6.)

The *DUI Lawyers* plaintiff's allegations discussed "decisionmaking" but particularly identified the ability of DMV managers to review, critique, and unilaterally

3.

reverse the APS hearing officer's decision to set aside a suspension on an ex parte basis. That is, the plaintiff's allegations focused on the ability of DMV's managers to control the findings made through, and the ultimate result of, an APS hearing through ex parte communications with the APS hearing officer or through a unilateral ex parte review without notice to the drivers. Such a practice certainly results in controlling the facts determined and the ultimate decision of an APS hearing and thus, the decisionmaking process of an APS hearing. Considering that the point of an APS hearing is to ascertain whether a driver's license should remain suspended because the driver was driving with a blood alcohol level of 0.08 percent or higher, I think that the "decisions" of the APS hearing officers that were the subject of the *DUI Lawyers* injunction refer to the findings and conclusions made by the APS hearing officer at the conclusion of the APS hearing.

In this case, however, the specific findings and conclusion of the APS hearing suspension orders are not directly challenged. Instead, the "decision" that is directly challenged is the decision to not grant a continuance. A continuance is not actually part of the APS hearing itself, it is a preliminary step to get to the hearing. A continuance determines no facts of consequence in terms of the issues decided at an APS hearing, nor does a continuance or the issues associated with a continuance determine whether a license suspension will be set aside or upheld. The granting or denial of a continuance merely determines when the APS hearing will be held and when the facts and issues regarding a license suspension will be decided.

Further, by statute, an "agency may grant continuances." (Gov. Code, § 11524, subd. (a).) The agency in this case is the DMV. Appellants' briefing primarily describes orders denying a continuance that were issued by an APS hearing officer, but some of the denials were issued by DMV branch manager Windover. The denial by Windover would appear to be a denial on behalf of the agency, in accordance with the first sentence of section 11524, subdivision (a). Such a denial would not be ex parte because it is direct action and communication between the DMV and appellants.

4.

In light of these considerations, it is not clear that appellants' due process rights regarding ex parte communications and review were violated by the denial of their requests for continuances. Because this constitutional violation is unclear, I do not think we should resolve this appeal on that basis.

*Construction of Section 11524(b)*

Given its conclusion that a due process violation occurred, the majority opinion did not interpret section 11524(b) in relation to appellants' requests. Because I do not agree with this approach, it is necessary to turn to section 11524(b).

Section 11524 provides that continuances "should be granted for good cause shown." (*Petrus v. Department of Motor Vehicles* (2011) 194 Cal.App.4th 1240, 1244; see also *Bussard v. Department of Motor Vehicles* (2008) 164 Cal.App.4th 858, 864 (*Bussard*).) Specifically:

> "When seeking a continuance, a party shall apply for the continuance within 10 working days following the time the party discovered or reasonably should have discovered the event or occurrence which establishes the good cause for the continuances. A continuance may be granted for good cause after the 10 working days have lapsed if the party seeking the continuance is not responsible for and has made a good faith effort to prevent the condition or event establishing the good cause." (Gov. Code, § 11524, subd. (b); *Bussard*, at p. 864.)

The "10 working days" timeframe imposes a "reasonable diligence" requirement for a party seeking a continuance. (*Bussard*, at p. 864.) The "10 working days" timeframe should be evaluated from the point in time at which, from an objective standpoint, the basis for a requested continuance became "reasonably foreseeable." (See *ibid.*) The factors and considerations which influence the decision on a continuance can vary greatly from case to case. (*Ibid.*)

Here, there is no dispute in the general sense that a conflicting court appearance in a criminal matter represents "good cause" to continue an APS hearing. This is consistent with Penal Code section 1050, which provides in part that "criminal cases shall be given precedence over, and set for trial and heard without regard to the pendency of, any civil

5.

matters or proceedings." (Pen. Code, § 1050, subd. (a) (section 1050(a)).) Each of the appellants' requests involve at times multiple conflicting criminal matters (trials or hearings) that were believed to conflict with an individual driver's APS hearing. Therefore, through operation of section 1050(a), there is a basis for "good cause" for each requested continuance.

What the parties strongly dispute is whether the requested continuances were properly denied as "untimely." The crux of the issue boils down to the point in time that appellants' counsel "discovered or reasonably should have discovered," (Gov. Code, § 11524, subd. (b)), the conflicting criminal matters. Our court's opinion in *Bussard* shows that this point in time is the point at which the need for the continuance became "reasonably foreseeable." (*Bussard*, *supra*, 164 Cal.App.4th at pp. 864–865 [explaining that a hearing officer's continuance during an APS hearing to obtain a witness's testimony was not an abuse of discretion because the need for the witness's testimony had not been reasonably foreseeable prior before the APS hearing had begun].)

The DMV contends that all counsel will know there is a conflict the moment a new hearing (either an APS hearing or a criminal matter) is formally scheduled for the same day as an existing matter (either an APS hearing or a criminal matter). Appellants contend that usually a conflict between an APS hearing and a criminal matter is not sufficiently clear the moment the criminal matter is scheduled because criminal matters (particularly trials) often do not proceed as scheduled for a variety of reasons. Therefore, appellants contend that it will only be at a later point in time when counsel knows with sufficient certainty that a scheduled criminal matter will likely conflict with an APS hearing. In other words, while both sides recognize the importance of the hearing date for a criminal matter, the DMV treats the date as per se establishing the existence of a conflict, while the appellants treat the date as generally establishing a potential conflict that is to be monitored.

There are practical concerns with both side's approaches. appellants' approach could lead to "last minute" (though not necessarily unwarranted) continuances, while the DMV's approach could lead to continuances being unnecessarily granted far in advance of an APS hearing. On balance, I believe that the appellants' position is the more reasonable. The position is consistent with the nature and reality of criminal practice. Because the criminal courts of California are heavily impacted, criminal hearings and trials are often continued, reset, or trailed, or may "spill over" and require additional court time to resolve than initially scheduled. Further, since "*most* [criminal] cases are resolved by plea bargain" (*People v. Ellis* (2019) 43 Cal.App.5th 925, 942), a criminal case may resolve itself at any time before trial, thereby resulting in the cancellation of any prior scheduled trial or hearing. Of necessity, criminal schedules have a significant degree of fluidity about them that strongly counsels against the DMV's position.[1]

Accordingly, section 11524(b)'s 10-working day timeframe to timely request a continuance is triggered when it becomes reasonably foreseeable that the conflict producing event will likely occur. When the likelihood of conflict is reasonably foreseeable, it is then that counsel discovers or reasonably should discover the conflict. Whether a continuance should be granted will depend on the facts of each case. Nevertheless, where the conflict producing event is a *criminal trial or hearing*, it is not per se reasonably foreseeable that there will be a conflict on the date that the criminal matter is scheduled to proceed. Also, if a request for continuance is made within 10-working days of when it became reasonably foreseeable that the criminal conflict would likely occur, i.e. when the attorney discovered or reasonably should have discovered the criminal matter was likely to proceed in conflict with an APS hearing, then the request is

---

[1] Appellants' approach also appears consistent with the DMV's practice prior to this litigation. Appellants' counsel represented that under this practice, his office handled 10 to 20 APS hearings a week. However, under the approach urged by DMV, which was attempted to be implemented first by DMV Manager Christopher Pitchford and then Manager Windover, counsel's office handled two APS hearings per year.

timely under the plain language of section 11524(b), irrespective of whether the request was made within 10-working days of the APS hearing. Finally, while it may request more information if needed, the DMV should generally consider a requested continuance in light of the facts that existed at the time the request is made and should not unnecessarily delay a ruling.

*Application of Section 11524(b)*

Whether the APS hearing officer had the discretion to deny appellants' continuances pursuant to section 11524(b) and in light of the existing circumstances is a legal question that is reviewed de novo. (*Bussard*, *supra*, 164 Cal.App.4th at p. 858; see also *People v. Investco Management & Development LLC* (2018) 22 Cal.App.5th 443, 456–457.) Therefore, we independently review whether the APS hearing officer's decision to deny appellants' continuances was within the scope of his or her discretion under section 11524(b). (*Bussard*, at p. 863; see also *Investco Management & Development LLC*, at pp. 456–457; *Pedro v. City of Los Angeles* (2014) 229 Cal.App.4th 87, 99 (*Pedro*).) The decision to grant or deny a continuance through section 11524 is reviewed for an abuse of discretion. (*Bussard*, *supra*, at pp. 863, 865; *Ring v. Smith* (1970) 5 Cal.App.3d 197, 201–202.) There is no absolute right to a continuance, or a denial of due process, in the absence of an abuse of discretion. (See *Cooper v. Board of Medical Examiners* (1975) 49 Cal.App.3d 931, 944; *Ring*, at p. 201.) To find an abuse of discretion, the abuse must be so clear that there is a miscarriage of justice. (*Bussard*, at pp. 863.) Because an exercise of discretion must be based on correct legal premises, the use of an incorrect legal standard necessarily constitutes an abuse of discretion. (See *Grossmont Union High School District v. Diego Plus Education Corp.* (2023) 98 Cal.App.5th 552, 584 (*Grossmont*); *Minik v. City of Petaluma* (2016) 3 Cal.App.5th 15, 25 (*Minik*); *Pedro*, at p. 99.) Further, reliance on impermissible factors to reach a decision can also amount to an abuse of discretion. (*Sosa v. CashCall, Inc.* (2020) 49 Cal.App.5th 42, 47 (*Sosa*).)

In this appeal, I believe that the denial of appellants' continuances was an abuse of discretion due to considerations that were contrary to the proper application of section 11524(b). First, the denials appear to have been assessed with the understanding that any conflict became reasonably foreseeable as soon as a criminal matter and an APS hearing were calendared for the same day. Second, for some requests, the APS hearing officer appeared to assume that if a request for continuance was filed within 10-working days *of the APS hearing*, the request was untimely, even though the plain language of section 11524(b) sets the 10-working days timeframe from when the likelihood of a conflict became reasonably foreseeable. Third, for some requests, the APS hearing officers asked if counsel had brought the conflicting APS hearing to the attention of the criminal court and then implicitly faulted counsel for not doing so, even though the APS hearing is a civil matter, (Veh. Code, § 13353.2, subd. (e); *Nick v. Department of Motor Vehicles* (1993) 12 Cal.App.4th 1407, 1415), and section 1050(a) requires that criminal trials be set "without regard to the pendency" of any civil matter. (Pen. Code, § 1050, subd. (a).) Fourth, for some requests, it appears that a ruling was *unnecessarily* delayed and then denied after the conflict identified by counsel failed to actually materialize, even though the passage of time does not mean that the conflict was not reasonably foreseeable at the time the request was filed. Finally, for some requests, the APS hearing officers faulted counsel for identifying additional conflicts through supplemental requests after an initial continuance was denied, even though section 11524(b) does not require identification of every potential conflict that may exist, and the APS hearing officers did not appear to consider how the resolution of the identified conflict could affect other scheduled criminal matters.

Not every continuance in this consolidated appeal was denied in the same way or on the same purported bases. I also recognize that not all of appellants' requests were as detailed as they could or should have been. Nevertheless, each of the denials suffers from one or more of the five practices identified above that are contrary to section 11524(b) or

9.

section 1050(a).  In other words, the denials were based on standards, factors, and/or legal premises that are contrary to section 11524(b) or section 1050(a).  Thus, the denials constitute an abuse of discretion.  (*Grossmont*, *supra*, 98 Cal.App.5th at p. 584; *Sosa*, *supra*, 49 Cal.App.5th at p. 47; *Minik*, *supra*, 3 Cal.App.5th at p. 25; *Pedro*, *supra*, 229 Cal.App.4th at p. 99.)  Further, the denials resulted in the uncontested loss of a protected liberty interest (a license) without the opportunity to present a defense, which implicates due process.  (Cf. *Petrus*, *supra*, 194 Cal.App.4th at p. 1244 [finding a denial of the due process right to present a defense was violated when discovery was received late, and a continuance was denied by the APS hearing officer].)  Accordingly, reversal is appropriate, and appellants' writs should be granted.  (*Ibid.*; see also *Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527 [noting that "an abuse of discretion results in reversible error only when the denial of a continuance results in the denial of a fair hearing, or otherwise prejudices a party"]; *Cooper v. Board of Medical Examiners*, *supra*, 49 Cal.App.3d at p. 944, italics added [noting that "there is no absolute right to a continuance *unless* the refusal thereof would be an abuse of discretion"].)

> *Conclusion*

I agree with much of the majority's analysis and the ultimate resolution of this appeal (remanding with instructions to grant the writ and awarding attorney fees), but, as described above, I get to that point through a different path – section 11524(b) instead of managerial ex parte communications and review.  Therefore, except for parts IV.D. and IV.E., I join the majority opinion.


POOCHIGIAN, Acting P. J.